**Larry R. BOONE, Appellant,**

**v.**

**M. Rebecca BOONE, Appellee.**

**No. S–7900.**

Supreme Court of Alaska.

June 12, 1998.

Terri Spigelmyer, Haas & Spigelmyer, Homer, for Appellant.

Allan Beiswenger, Robinson, Beiswenger & Ehrhardt, Soldotna, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Larry Boone had sole physical custody of his two children for approximately ten months while he and Rebecca Boone litigated changes to their original child custody and support orders. After seeking modification of the original child support order, Larry moved to reduce to judgment the child support arrearages Rebecca would owe for this ten-month period if his modification motion succeeded. The superior court denied his motion for an arrearages judgment. Because we hold that the children's change in residences created a material change in circumstances justifying modification of the child support order, we reverse and remand for calculation of the total amount owed by Rebecca under Alaska Civil Rule 90.3.

### II. FACTS AND PROCEEDINGS

Larry and Rebecca Boone married in 1983 and divorced in 1989. The divorce decree awarded Rebecca sole legal custody of the parties' two children, Sarah and Levin.[1] Larry and Rebecca shared physical custody of the children. The court ordered Larry to pay Rebecca $700 per month in child support for the two children under Civil Rule 90.3.

Larry first moved to modify the custody order in October 1994. The court denied that motion in January 1995 and denied Larry's motion for reconsideration without prejudice to refile if Larry and Rebecca could not work out a visitation schedule by March 31. The parties extended to May 15 the time to refile the motion to modify, and stipulated that they would accept the recommendations of a custody investigator. The court approved the stipulation in April. Before the custody investigator had completed an investigation or issued any recommendation, Larry filed and served a motion dated June 28, 1995, to modify child support, asserting material changes of circumstances. Larry asserted, among other things, that Levin had moved into Larry's home in May 1995 and had refused to return to Rebecca's home.

No order had been entered prospectively approving that change of custody. In anticipation of a final custody recommendation from the investigator, Larry asked that support be modified effective the date he served his modification motion on Rebecca. Rebecca opposed the motion, arguing in part that Levin's move was temporary and that any changes in child support should await resolution of Larry's request to modify custody.

In August 1995 the parties asked the court to delay resolving the child support issue until after the court resolved the custody issue. At about the same time, Sarah moved into Larry's home, with Rebecca's permission. Larry did not file a new motion to modify child support based on Sarah's move.

In September 1995 the guardian ad litem (GAL) issued custody recommendations, which Larry accepted but Rebecca did not. The custody issues remained in dispute until May 24, 1996, when the parties finally settled

---

1. Sarah was born in 1983. Levin was born in 1985.

the custody and prospective child support issues. The parties agreed upon child support to be paid after May 24, 1996, but they were unable to agree upon the amount of arrearages Rebecca owed Larry for the period between July 1, 1995, when Rebecca was served with Larry's June 28 motion to modify child support, and May 24, 1996.

Larry argued in the superior court that a material change in circumstances justified making the modification of support effective July 1, 1995. Larry requested entry of a judgment for the amount of arrearages Rebecca would owe as a result of that modification. Rebecca argued that, because no order had modified the original custody order, she owed no arrearages for the contested period. She alternatively argued that even if she owed arrearages based on the "actual custody arrangement" (by which both children lived with Larry with Rebecca's permission), various "unusual circumstances" excused her from owing any arrearages for the period before May 1996.

The superior court denied Larry's request for an arrearages judgment. It apparently never ruled on Larry's June 28, 1995, motion to modify child support. The court issued no findings of fact.

Larry appeals.

## III. DISCUSSION

### A. The Custodial Change Qualified as a Material Change in Circumstances for Purposes of Rule 90.3(h)(1).

■■■ The superior court may modify a child support award upon a showing of a "material change of circumstances." Alaska R. Civ. P. 90.3(h)(1). Larry argues that the superior court abused its discretion by failing to modify child support because material changes in circumstances had occurred when the children moved into his home.[2] According to Rebecca, the changes in custody were not material changes because they constituted a "temporary, and voluntary, physical cus-

tody arrangement which was never ordered by the court."

Although the children's moves into Larry's home were not ordered by a court, they qualify as material changes in circumstances. See Bunn v. House, 934 P.2d 753, 758 (Alaska 1997) (stating that a change in custodial or visitation patterns may constitute a material change in circumstances); Karpuleon v. Karpuleon, 881 P.2d 318, 320 (Alaska 1994) (stating that a child's change in residence is a material change of circumstances). As we have noted, it is sometimes difficult to ascertain whether a child's change of residence is sufficiently permanent as to create a material change in circumstances. See Karpuleon, 881 P.2d at 321–22. Nonetheless, the undisputed facts allow us to conclude that the children's residential changes were sufficiently permanent as to constitute material changes in circumstances. Rebecca should have been ordered to pay child support during these periods.

Rebecca maintains that Larry's request for child support arrearages based on the parties' informal physical custody arrangement rather than the court-ordered arrangement violates Turinsky v. Long, 910 P.2d 590, 598 (Alaska 1996). In Turinsky we held that the trial court erroneously based child support arrearages on the amount of visitation actually exercised rather than the amount of visitation awarded. Id. at 595. However, the obligor parent in Turinsky (who sought to conform child support to the actual custody rather than the ordered custody) never tried to modify the child support agreement once visitation changed. Id. at 592–93, 595. We noted that if the parties do not follow the custody order, they "should move to modify the child support order." Id. at 595; see also Karpuleon, 881 P.2d at 320 (stating that the burden is on the parent to move for modification of child support when there is a material change in circumstances).

■■■ Unlike the obligor parent in Turinsky, Larry moved to modify the support order soon after Levin's actual custo-

---

2. A court's modification of a child support award is reviewed for an abuse of discretion and will not be set aside unless a review of the record as a whole leaves the appellate court with a definite and firm conviction that a mistake has been made. See Yerrington v. Yerrington, 933 P.2d 555, 557 n. 3 (Alaska 1997); Nass v. Seaton, 904 P.2d 412, 414 (Alaska 1995).

dy · arrangement first changed. *Turinsky* therefore does not bar Larry from seeking arrearages. Rather, his timely efforts to obtain judicial modification of the child support order, and the superior court's postponement of the support issue until after the custody issue was resolved, preserved the support issue. We have stated that, "absent extraordinary circumstances, courts should apply the calculation methodology of Rule 90.3 to determine amounts to be reimbursed to custodial parents for support of children during periods not covered by support orders." *Vachon v. Pugliese*, 931 P.2d 371, 382 (Alaska 1996). Because the original support order should have been modified with respect to the periods of Levin's and Sarah's residence with Larry from July 1, 1995, through May 24, 1996, those periods were effectively "not covered" by the original support order, and Larry should be reimbursed in accordance with Rule 90.3. *See also Crayton v. Crayton*, 944 P.2d 487, 489 (Alaska 1997) (holding that parent was entitled to reimbursement for period during which physical custody arrangement deviated from the custody arrangement originally entered by the court at the time of the divorce; interim custody order issued when children changed residences failed to address child support).

■ We note that Larry did not file a motion that expressly sought to modify child support based on Sarah's move. (Sarah moved into Larry's home in August 1995, after Larry filed his June 28 motion to modify child support.) Ordinarily, imposing arrearages for past child support absent a motion expressly seeking such support would be a retroactive modification of child support prohibited by Rule 90.3(h)(2). Given the circumstances in this case, however, Larry's June motion seeking a modification of child support can be read to encompass the material changes in circumstances engendered by both Levin's and Sarah's moves. On August 7, 1995, the parties asked the court to delay ruling on Larry's motion to modify child support until after it resolved the custody issue. Six days later, Rebecca permitted Larry to have sole physical custody of Sarah. Because Sarah's move nearly coincided with the parties' agreement to postpone resolving support until custody of both children was resolved, Larry was not required to file a new motion to modify child support based on Sarah's move. Imposing arrearages for Sarah's support effective the day she moved does not violate Rule 90.3(h)(2).

Because nothing prevents the children's residential changes from being material changes in circumstances, Larry is entitled to recover child support arrearages for the periods during which he had custody of the children. We therefore reverse the superior court's October 24, 1996, order and remand for a calculation of arrearages.

Larry also asserts that an increase in Rebecca's salary and his impending change of employment were material changes in circumstances justifying modification of child support under Rule 90.3(h)(1). Because we hold that the children's moves constituted material changes of circumstance justifying changes in child support, we need not reach Larry's other arguments. To the extent these other circumstances may bear on the amount of support due, they may be relevant on remand.

■ On remand, the superior court must calculate the amount Rebecca owes Larry under Rule 90.3. In *Turinsky* we stated that,

> If the custody status of any or all of the children changed for an interim period, the analysis for that period also should have changed. The most accurate way to calculate support in such situations is to calculate it for each interim period, looking at each interim period in isolation.

910 P.2d at 595–96. The court should look at each period in isolation to determine the child support arrearages owed to Larry.

Citing *Turinsky*, Larry calculates the arrearages by dividing the time between July 1, 1995, through May 24, 1996, into two interim periods. The first period ran from July 1, 1995, until August 12, 1995, when Sarah came to live with him. The second period ran from August 13, 1995, to May 24, 1996, when the parties reached agreement on issues other than arrearages. Larry had sole custody

of both children during this second interim period. For the first period, Larry calculates the amount Rebecca owed him for sole custody of Levin under Rule 90.3(a), and the amount Larry owed Rebecca for shared custody of Sarah under Rule 90.3(b). For the second period, when he had sole physical custody of both children, he calculates the amount Rebecca owes him under Rule 90.3(a). So calculated, Rebecca's arrearages are $6,861.89 plus interest. Unless the court on remand finds justification for varying from these calculations, see Part III.B, this is the amount of the judgment to be entered.

### B. *Rebecca's Financial Circumstances May Justify Departing from Rule 90.3.*

Rebecca argues that even if child support should have been modified when the children changed residences, the "unusual circumstances" of her financial situation should excuse her from paying arrearages. Civil Rule 90.3 allows for variations from the rule for good cause. Alaska R. Civ. P. 90.3(c); *Epperson v. Epperson*, 835 P.2d 451, 452–53 (Alaska 1992). A court may vary a child support award if a parent proves by clear and convincing evidence that manifest injustice would result if the award were not varied; the rule also requires the court to follow a specified written procedure if it varies the award. Alaska R. Civ. P. 90.3(c)(1). *See Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996); *Coats v. Finn*, 779 P.2d 775, 777 (Alaska 1989). Had the court meant to depart from Rule 90.3 based on Rebecca's alleged "unusual circumstances," it would have been error to fail to issue written reasons for deviating from the guidelines. Absent any such findings, we conclude that the superior court intended not to invoke Rule 90.3(c)(1) when it denied Larry's motion for an arrearages judgment.

■ As noted in Part III.A, we are remanding this case for calculation of the arrearages Rebecca owes for the periods during which Larry's June 28 support modification motion was pending. On remand,

the court may consider whether Rebecca's financial circumstances during those periods justify a departure from Rule 90.3. Rebecca has the burden of showing why an award calculated under Rule 90.3 would result in manifest injustice. *See Epperson*, 835 P.2d at 453 (burden of persuasion is on the party objecting to the application of the rule). Should the superior court determine that there is good cause to excuse Rebecca from paying child support arrearages, the court must explain in writing its reason for the variation. *See Berkbigler*, 921 P.2d at 631.

■ Larry and Rebecca raise questions about what types of facts may demonstrate "unusual circumstances" justifying variation from Rule 90.3. We dispose of one of these issues prior to remand. Rebecca argues that she has incurred substantial fees and debt during this protracted litigation. Rebecca's debt does not create an "unusual circumstance" for purposes of Rule 90.3(c)(1)(A).[3]

### C. *Absent a Contrary Good Cause Finding, Larry Was Entitled to a Modification of Child Support Effective the Date He Served His Motion.*

■ Rebecca argues that if child support should have been modified when the children changed residences, the superior court had discretion to choose an effective date for the modified support order. She implies that the date she was served with Larry's motion is the earliest date, but not the mandatory date, from which child support arrearages may be calculated. Larry argues that the superior court was obligated to apply Rule 90.3 effective the date Rebecca was served with his motion to modify child support, and that any discretion to apply a later date is subject to the requirements of Rule 90.3(c). The superior court never reached this issue because it altogether denied Larry's request for an arrearages judgment and never decided his June 28, 1995, motion to modify child support. We discuss it because the court will have to reach the issue on remand.

---

**3.** *See* Alaska R. Civ. P. 90.3 cmt. VI.B.5 ("Prior or subsequent debts of the obligor, even if substantial, normally will not justify a reduction in support."); *Berkbigler v. Berkbigler*, 921 P.2d 628, 631–32 (Alaska 1996) (same).

Rule 90.3(h)(2) prohibits retroactive modification of a child support arrearage. But it also provides that a modification that becomes effective "on or after" the date the modification motion is served on the opposing party "is not considered a retroactive modification."[4] We have read Rule 90.3(h)(2) to prohibit increases or decreases in child support effective before the date the modification motion was served on the opposing party.[5] We have also read it to allow the court to increase child support only after that service date.[6] The rule implicitly permits a court to modify child support effective the date the opposing party was served.

The rule's text does not express a preference or presumption that a modification become effective on the motion service date, and does not prevent the superior court from exercising its discretion and selecting a later effective date. But we are nonetheless persuaded that the motion service date should be the preferred effective date, and that the superior court should exercise its discretion in selecting a different effective date only if it finds good cause for doing so. One reason for our preference of the motion service date as the effective date of a modified child support order is that child support reflects the child's current needs. Another is that child support is both based on and paid out of the obligor's current income.[7] Ideally, a claim of changed circumstances would be immediately resolved to permit immediate relief to the movant. Delays in resolving such disputes should not disadvantage parties entitled to relief. The rule commentary, noting the prohibition on retroactive modification, urges prompt applications: "Thus, either the custodial or the obligor parent should promptly apply for a modification of child support when a material change in circumstances occurs." Alaska R. Civ. P. 90.3 cmt. X.

Other jurisdictions have reached the same result:

> We hold that a trial court has discretion to order a modification of child support effective as of the date the petition to modify is filed. Any other result would be inconsistent with the purposes of the changed circumstances rule. The needs of the children, upon which the court focuses in determining whether a substantial and continuing change of circumstances has occurred, are examined as of the date the petition is filed. If the court finds that a modification of child support is justified, then the court has discretion to order payments to be effective from that date. To grant modification of support only from the date of the court's order detracts from the purposes of the changed circumstances rule and serves to encourage and benefit dilatory tactics.

*Kruse v. Kruse*, 464 N.E.2d 934, 939 (Ind. App.1984).[8]

Further, service of the motion gives the opposing party both fair warning that support may change and an opportunity to reas-

---

**4.** Rule 90.3(h)(2) provides:
> Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d). A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Enforcement Division, is served on the opposing party is not considered a retroactive modification.

In *Perry v. Newkirk*, 871 P.2d 1150, 1156 (Alaska 1994), we noted that "[o]n remand, [the Superior Court] should either enter an order requiring [the obligor's] child support to begin when [the obligor] was served with the motion, or enter findings and conclusions as to why such a commencement point should not be used." We did not say what "findings and conclusions" would justify selecting another date.

**5.** *Yerrington v. Yerrington*, 933 P.2d 555, 558 (Alaska 1997).

**6.** *Boone v. Gipson*, 920 P.2d 746, 749 (Alaska 1996).

**7.** *See Flannery v. Flannery*, 950 P.2d 126, 133 (Alaska 1997) (holding that superior court, in considering obligor's January 1995 motion to modify alleging decline in income, erred because it did not consider January 1995 onward as the relevant period of changed circumstances, and instead relied solely on the 1992–94 average of obligor's income).

**8.** Although *Kruse v. Kruse*, 464 N.E.2d 934, 939 (Ind.App.1984), refers to the date the motion is *filed* rather than the date it is *served* as the effective date, the reasoning is the same. We hold that the date the motion is served is preferable, however, because it is as of that date that the opposing party has notice.

sess, even before the court rules, the correct amount of support. This gives an opportunity to adjust consumption patterns in anticipation of modification, and thus minimize prejudice when relief is granted effective as of the service date.

This preference does not prevent the superior court from exercising its discretion to select a later effective date if it finds good cause for doing so. But unbounded discretion to choose a later effective date could sabotage the efficacy of Rule 90.3. Logically extended, Rebecca's argument would give the court discretion to choose any date after the date of service, and would allow the choice of no date at all.

We therefore reject Rebecca's argument. On remand, the superior court should calculate her arrearages beginning with the date Larry served Rebecca with his June 28 motion to modify, unless Rebecca can establish good cause for selecting some later effective date.

## IV. CONCLUSION

For these reasons, we REVERSE the superior court's denial of Larry's motion for child support arrearages. We REMAND with instructions to calculate the amount Larry is owed according to Rule 90.3 and to enter judgment for arrearages in favor of Larry. The superior court may consider whether there is good cause to vary the support award under Rule 90.3(c). If it concludes that good cause exists, it must issue appropriate written findings that satisfy Rule 90.3(c)(1). Unless Rebecca can establish good cause for selecting some other dates, the service date of Larry's motion will be the effective date of the change of support for the first interim period, and August 12 (when Sarah moved) will be the effective date of the support change for the second interim period.