Donalita G. **MALONEY**, Appellant,

v.

Michael B. **MALONEY**, Appellee.

No. S–8067.

Supreme Court of Alaska.

Dec. 24, 1998.

---

**13.** *Id.* at 1231.

**14.** *Id.* at 1232.

G.R. Eschbacher, Anchorage, for Appellant.

Kenneth Kirk, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

After voluntarily retiring from the military, Michael Maloney moved to reduce his child support obligation. The superior court granted his motion. We affirm. The superior court did not clearly err in finding that Michael was not voluntarily underemployed and that Donalita Maloney's income and Michael's reduced support were sufficient to meet their child's needs; it therefore did not abuse its discretion in reducing Michael's child support obligation.

## II. FACTS AND PROCEEDINGS

Donalita and Michael married in 1970. They have two children, Michael, born in 1976, and Lisa, born in 1980. They divorced in 1992. The superior court awarded Donalita sole physical and legal custody of the children and ordered Michael to pay child support calculated under Civil Rule 90.3. Michael was then a major in the United States Air Force. He was transferred to Hawaii after the divorce.

Michael retired from the Air Force as a lieutenant colonel in November 1995, after twenty years of active service. He was then forty-six years old, and was obligated to pay child support for Lisa for three more years. In July 1996 Michael asked the court to reduce his monthly child support obligation from $936.89 to $248.20. He affied in support that he had retired from the Air Force; that he now received net military retirement pay of $1,092.57 monthly; that he had been actively seeking work but was unable to obtain consistent employment; that he could not obtain unemployment benefits; and that he was suffering from medical problems. He later affied that it was "very unlikely" he would have been able to continue in the military, that he would have been referred to a Selective Early Retirement Board (SERB) (he claimed such a referral would have been considered a "black mark"), and that he had been told that he would likely be medically retired if he did not otherwise retire. He affied that job applications he had filled out asked whether he voluntarily or involuntarily separated from the military, and that "I knew it would be better for my career if I voluntarily retired."

Donalita opposed Michael's motion. She argued that Michael should not have retired without first securing a new job, that he made inadequate efforts to obtain reemployment, and that he was seeking to transfer the financial burden of his new "relaxed lifestyle" to Donalita and Lisa.

Superior Court Judge Michael L. Wolverton presided over two hearings on Michael's motion to modify child support. In a March 1997 order, the court found that Michael had voluntarily retired "to protect and perhaps enhance his ability to secure employment in the future," and concluded that Michael was not voluntarily underemployed. The court determined that Donalita's income, together with Michael's reduced support contributions, was sufficient to meet Lisa's needs, and held that Michael was entitled to a reduction of child support. The court imputed monthly income of $500 to Michael, based on the fact that Michael lived rent-free in his wife's home following remarriage, and calculated his annual net income to be $20,892. In April 1997 the court reduced child support to $348.20 per month effective July 25, 1996, the date Michael filed his reduction motion.

Donalita appeals.

## III. DISCUSSION

### A. Standard of Review

■ ■ "A court's modification of a child support award 'will not be overturned absent a finding of a clear abuse of discretion.'" [1] "We will disturb an award only if our review of the entire record leaves us with a definite and firm conviction that a mistake has been made." [2] "[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." [3] "We review factual findings for clear error." [4]

### B. Child Support Modification

■ ■ Donalita asserts that the superior court abused its discretion by finding that Michael was not voluntarily underemployed and by reducing his child support obligation. She argues that the superior court supported its decision with conclusions that Michael would have been passed over for promotion had he not retired voluntarily, that a person

---

[1]. Nass v. Seaton, 904 P.2d 412, 414 (Alaska 1995) (quoting Eagley v. Eagley, 849 P.2d 777, 778 & n. 1 (Alaska 1993)).

[2]. Id. (quotation omitted).

[3]. Parker v. Northern Mixing Co., 756 P.2d 881, 892 (Alaska 1988).

[4]. Harrelson v. Harrelson, 932 P.2d 247, 252 n. 6 (Alaska 1997) (citing State, Dep't of Revenue v. Merriouns, 894 P.2d 623, 625 (Alaska 1995)).

voluntarily retiring has a better chance of securing equal or better civilian employment than a person passed over for promotion, and that Michael voluntarily retired to protect and perhaps enhance his ability to secure employment in the future. She claims that the evidence does not support these conclusions, and that it was speculative to assume that he would ever go before a promotion board or a SERB. She also argues that Michael provided insufficient evidence of his medical problems, and that Michael had not made a good faith effort to secure new employment.

Michael contends that the superior court appropriately reduced his child support obligation after concluding that Michael retired in order to improve his financial opportunities.

A final child support award may be modified only upon a showing of a material change in circumstances.[5] We have considered several cases in which child support obligors sought child support reductions based on their unemployment, and have remanded to determine whether the unemployment was voluntary,[6] or have concluded that even if the resignation was involuntary, the trial court must consider all circumstances of change in employment to determine whether reduction is warranted.[7] We have held in such cases that "a noncustodial parent who voluntarily reduces his or her income should not automatically receive a corresponding reduction in his or her child support obligation."[8] But we have also noted the "tension between locking an obligor into a career and the burden that the obligor's career change places on the custodial parent and the child."[9] In determining whether to modify child support following a voluntary employment change, a trial court should consider the nature of and the reason for the change, and determine whether a modification is warranted under all the circumstances.[10]

The superior court justified the modification on grounds that (1) Michael might have been passed over for promotion due to his disabilities, and (2) a person who retired voluntarily has a better chance of securing civilian employment at a comparable or higher wage than a person who had been passed over for promotion.

Evidence supported these conclusions. Richard May, a retired Air Force colonel and Michael's former supervisor, affied and testified that Michael's decision to retire was appropriate under the circumstances. In his November 1996 affidavit, May opined that Michael's decision to retire was logical:

> [Michael received] a performance report with negative comments in the narrative.... At this level, his chances of being promoted would have been very low, after that negative review.... [Michael] would probably not have been promoted.... [T]here was a significant likelihood that [Michael] would have been involuntarily separated from the Air Force. In my opinion, it was a logical decision for him to separate voluntarily from the Air Force, with the assumption that it would have looked better on his resume to have voluntarily retired after twenty years, than to have been forced into an involuntary separation.

With respect to Michael's medical problems, May affied that, "[i]t is my understanding that [Michael] has subsequently been rated as 50% disabled by the Air Force. If that is the case, then it is my opinion that the medical people would have insisted he involuntarily retire."

May's testimony at the November 20, 1996, hearing offered the same conclusion:

> Based upon what I have seen of his military career and without having a lot of knowledge about his private situation, my opinion is that he would have had very

**5.** See Alaska R. Civ. P. 90.3(h)(1).

**6.** See Vokacek v. Vokacek, 933 P.2d 544, 549 (Alaska 1997).

**7.** See Patch v. Patch, 760 P.2d 526, 529 (Alaska 1988).

**8.** Nass, 904 P.2d at 418 (citing Pattee v. Pattee, 744 P.2d 658, 662 (Alaska 1987)).

**9.** Pugil v. Cogar, 811 P.2d 1062, 1066 (Alaska 1991).

**10.** See Nass, 904 P.2d at 418.

little opportunity or upward mobility and therefore, from a military career standpoint, my advice would have been for him to retire from the Air Force and to pursue a civilian career.... [H]e was clearly not—not likely, in my opinion, to be promoted. I think there was reason for him, having seen the history of selective reductions and so forth, to assume that he might be vulnerable and it would be logical for someone to come to the conclusion, and I might well do that myself, that if I retired at my own pace and time and that it was known that I retired at my own pace and time as opposed to being told to retire, then that would enhance my employability and credibility on a job search even though the official records would read the same in either case. Now, again, that's conjecture on my part because there—there were not impending firm selective early retirement boards at that time, but that was—that would be the military advice that I would have provided at the time.

Michael had testified concerning his medical condition, his reasons for leaving the military, and his efforts to find work. Given May's and Michael's testimony, the superior court's findings are not clearly erroneous; the superior court did not abuse its discretion in granting Michael's motion to modify child support based on this evidence.

### C. *Consideration of Donalita's Ability to Provide for the Child's Needs*

Before reducing Michael's child support obligation, the superior court found that Donalita's income, together with Michael's reduced child support contribution, was sufficient to meet Lisa's needs.

Donalita argues that, in so finding, the superior court improperly shifted the burden to her to "establish [her] earning capacity and demonstrate that it is insufficient with the proposed reduced child support to meet the children's needs." She also argues that

---

11. *See* Alaska R. Civ. P. 90.3 cmt. II ("[A]t least in the sole or primary custodial situation, the contribution of one parent does not affect the obligation of the other parent.").

12. *See* Alaska R. Civ. P. 90.3 cmt. I.B ("The primary purpose of Rule 90.3 is to ensure that

there was insufficient evidence to support the finding that reducing child support will not affect Donalita's ability to provide for Lisa; to the contrary, Donalita affied that she had to hold two jobs to support herself and Lisa while pursuing her graduate degree.

■ We first conclude that the superior court did not abuse its discretion by considering Donalita's income. Donalita correctly observes that non-custodial parents should not be relieved of their child support obligations simply because custodial parents can afford to maintain their children.[11] But if a non-custodial obligor is potentially entitled to a reduction in child support, a superior court must consider whether the custodial parent will be able to provide for the child if the court reduces the obligor's support obligation.[12]

■ The critical issue, then, is when to inquire into the custodial parent's income. The question of the custodial parent's ability to provide for the child cannot be the primary question; rather, it is a secondary question that should be reached only after the obligor parent has already proven grounds for reducing child support. The custodial parent's income becomes a relevant factor when the court determines the child's needs after the non-custodial parent has demonstrated changed circumstances.

There is no evidence that the superior court considered Donalita's income to be the primary question and reduced Michael's child support obligation simply because Donalita could provide for Lisa. Rather, the superior court considered Donalita's income as a secondary question only after Michael had demonstrated that his child support obligation should be reduced. The superior court did not abuse its discretion in considering whether Donalita (with Michael's help) could provide for Lisa.

---

child support orders are adequate to meet the needs of children, subject to the ability of parents to pay."); *see also Dewey v. Dewey,* 886 P.2d 623, 629 (Alaska 1994) ("The court must consider both the needs of the children as well as the needs and financial abilities of both parents.").

■ We next hold that the superior court did not err by concluding that Donalita's income was sufficient to support Lisa even if Michael's child support obligation was reduced. The court noted that Donalita makes a "reasonably good living working full-time." She also receives forty-four percent of Michael's military retirement each month. Donalita has not shown that the court erred in concluding that she can provide for Lisa.

### D. Effective Date of Child Support Modification

Donalita argues that the superior court erred by reducing the child support effective the date Michael filed his reduction motion, July 25, 1996, instead of the date Michael's motion was served on her (which we take to mean the date she received the motion by mail). It appears Michael served the motion by mail on July 25. "Service by mail is complete upon mailing."[13]

We need not decide here whether the reduction should have been effective July 25 or some other date, because Michael concedes that the modification could not take effect until August 1, 1996, when the August payment was due.[14] The effective date should therefore be August 1, 1996.

## IV. CONCLUSION

Because the superior court did not abuse its discretion when it reduced Michael's child support obligation, we AFFIRM. Given Michael's concession, the reduction became effective August 1, 1996.

BRYNER, Justice, with whom FABE, Justice, joins, dissents.

BRYNER, Justice, with whom FABE, Justice, joins, dissenting.

In my view, the superior court abused its discretion in granting Michael's motion to modify his support obligation.

The superior court found that Michael's decision to retire at age forty-six was a finan-cially reasonable career choice because, "due to [Michael's] disabilities, had he not voluntarily retired, in all likelihood, he would have been passed over for promotion for the remainder of his career." The evidence that Michael produced to support this finding is conjectural at best. Michael had never before been passed over for promotion, no adverse personnel action was pending against him when he decided to retire, and no such action was ever threatened. Even if Michael accurately foresaw the likelihood of being passed over for future military promotion, he knew that he would be able to continue serving at his current rank until his younger child reached the age of majority. Moreover, though Michael might reasonably have feared that his physical problems would jeopardize his chances to progress in the military, he had no apparent reason to think that these problems would not also impair his civilian earning capacity.

Giving due deference to the superior court's powers as a factfinder, however, I would willingly assume that, despite the speculative nature of the evidence, it did not abuse its discretion in finding that Michael made a sound economic choice when he decided to retire from the military. But the superior court failed to carry this finding to its logical conclusion: the soundness of Michael's choice is itself compelling proof that he needed no decrease in his child support payment; for if Michael's military retirement made economic sense, how could he complain that it impaired his long-term earning capacity?

Michael insists that he can have it both ways: he wants the court to find that he reasonably chose to retire because retirement was financially advantageous; yet he also wants the court to find that, having retired for financial advantage, he can remain permanently unemployed because no one could expect a man like him to find a job. Michael should not be allowed to tug at opposite ends of the same stick. One finding

13. Alaska R. Civ. P. 5(b).

14. We note, however, our recent discussion of this point in Boone v. Boone, 960 P.2d 579 (Alaska 1998). In Boone, we held that "the motion service date should be the preferred effective date, and that the superior court should exercise its discretion in selecting a different effective date only if it finds good cause for doing so." Id. at 585.

or the other might make sense, but together they are inconsistent.

Perhaps Michael could have reconciled this inconsistency had he alleged that some unforeseen event occurred after he retired, making it impossible for him to earn the income that he had anticipated. But Michael's superior court pleadings asserted no such unexpected change in circumstances. Michael asked the court to reduce his child support payments because he had been jobless since giving up his military career. Yet he was well aware of the circumstances that limited his job prospects before he decided to retire from the military: he certainly knew of his lack of civilian job skills; he tested the job market while still in the military and learned that it was not promising; and his failing health was one of the primary factors that led him to fear that the military would give him no future promotions. Having successfully insisted that he had been economically prudent in giving up his lucrative military career despite these circumstances, Michael cannot invoke the same circumstances to claim that his civilian earning capacity is now hopelessly impaired. The claim defies logic.

The superior court failed to acknowledge or to account for this internal tension in Michael's claim; indeed, by uncritically accepting Michael's argument, the court perpetuated the inconsistency. Instead of considering whether Michael's current joblessness reflected a lasting change, the court merely found that he was "conducting a job search" and was therefore not voluntarily underemployed. It appears that the court simply assumed that Michael's current unemployment was not a transitory phenomenon and could be treated as a permanent condition for purposes of modifying his existing support payments. Combining this assumption with its acceptance of Michael's reasons for retiring, the court came to the paradoxical conclusion that Michael had been economically prudent in abandoning his military career for a civilian job that he apparently had no foreseeable hope of obtaining. Ironically, in reaching this conclusion, the court gave Michael every incentive to remain permanently unemployed.

If Michael prudently chose to leave the military, as he convinced the superior court that he did, then he should suffer little difficulty in meeting his original support obligation; if he rashly opted for a civilian life that makes paying support inconvenient, then his child should not suffer the consequences of his voluntary underemployment. Either way, I would find that the superior court abused its discretion in reducing Michael's support obligation. Accordingly, I DISSENT from this court's decision affirming the superior court's order.