**Tom M. WILLIS, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellee.**

No. S-8367.

Supreme Court of Alaska.

Nov. 26, 1999.

James J. Davis, Jr., and Mark Regan, Alaska Legal Services Corporation, Juneau, and Robert K. Hickerson, Alaska Legal Services Corporation, Anchorage, for Appellant.

Douglas D. Gardner and Daniel N. Branch, Assistant Attorneys General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

Tom M. Willis appeals an administrative decision requiring him to pay the state more than $13,000 in child support arrears and $157 in ongoing monthly payments to reimburse the Child Support Enforcement Division for public assistance it paid on behalf of Willis's two young daughters. Although CSED reduced Willis's ongoing child support obligation by applying Alaska Civil Rule 90.3(c)'s "good cause" exception, Willis challenges the reduction as insufficient. He also challenges CSED's unexplained failure to reduce his arrears under the same exception. Because we conclude that CSED's decision requires clarification, we remand for further consideration and findings.

## II. FACTS AND PROCEEDINGS

In 1988 the State of Alaska began providing public assistance to Pauline Bobby on behalf of her two daughters, Arlettie, born in 1975, and Alice, born in 1979. CSED subsequently petitioned for an order establishing Willis's paternity of the two girls. On May 9, 1994, the superior court granted the petition and issued an order declaring Willis their father. The following year, CSED issued a Notice and Finding of Financial Responsibility directing Willis to pay ongoing support of $606 per month from April 1, 1995, and to pay $38,797 to reimburse the state for its public assistance payments, and for past-due support, accrued from May 1, 1988, to March 31, 1995. In calculating Willis's arrears and ongoing support obligation, CSED relied on average Alaskan wage statistics provided by the state's Department of Labor.

Willis, who lived in the village of Stony River with his wife of eight years and their four children, requested a formal hearing to challenge CSED's finding. CSED hearing officer Kay Howard conducted a telephonic hearing on December 4, 1995. Before the hearing CSED reduced Willis's ongoing support obligation to $462 per month effective November 1, 1995, and adjusted his arrears to $48,653 through October 31, 1995. These changes reflected Arlettie's emancipation upon her eighteenth birthday on August 31, 1993.

At the hearing, Willis requested a further reduction. He based this request in part on the contention Alice had spent periods of time in his custody and that Arlettie had actually become emancipated before her eighteenth birthday. But he also based this request on a claim of financial hardship resulting from his low earnings, unusually high family expenses, and limited job prospects.

To support his financial hardship claim, Willis relied on income tax returns from the years 1988 through 1994, which reflected less than $2,000 per year of adjusted income in 1988 and 1989, $14,587 and $12,095 per year of adjusted income in 1990 and 1991, and less than $11,000 per year of adjusted income from 1992 through 1994. Willis also testified at the hearing that he had recently lost a $300–per–month job at MarkAir, which had gone out of business. Willis explained that at the time of the hearing he was earning $860 per month working for the Post Office and for Arctic Circle Air. According to Willis, his wife earned an additional $300 per month. Willis contended that he had no immediate prospects for further employment, since jobs in Stony River are scarce. Willis further testified that his monthly bills and debts presently exceeded his salary. Specifically, he claimed that on a monthly basis he paid $90 for housing, $400 for food, $150 for gas, $200 for fuel to heat the house, $221 for a four-wheeler, $140 for a snow machine, $120–$140 for electricity, $212 for a boat motor, $25 for local phone charges, and $62 in credit card debt.

David Peltier, the Child Support Enforcement Officer who represented CSED at the hearing, did not dispute Willis's testimony. After hearing Willis testify, Peltier acknowledged that he understood Willis's "argument for poverty." But because Peltier had not yet received all of Willis's tax records and also wanted to see documentation corroborating Alice and Arlettie's custodial status, he told the hearing officer, Howard, that CSED would "relook" its figures after he received and reviewed this information. Howard asked Willis's counsel, James Davis, if Willis would provide the additional information. Davis replied that Willis would supply the information and that he had no objection to Peltier's further review of Willis's tax records. Davis nevertheless expressed concern that CSED might confine its further review to the written records, ignoring the testimony Willis had given to support his request for a hardship exemption:

> [I]t seems to me that the CSED's practice up until today in every case that I have ever dealt with it about, they don't—that hardship determination, whether or not somebody is indigent, I haven't seen how they calculate that. They look at the W–2s and the data the W–2s reflect, and I will get that all to the CSED, I guess all I am saying is that I hope they look at the testimony that [indiscernible] which is that Mr. Willis and his wife have four kids, are making a little under—it seems to me ten thousand dollars a year, and taking care of them in an expensive area to live.

Peltier replied that although he had no authority to determine whether a noncustodial parent qualifies for a hardship exemption, he could give the hearing officer a recommendation. In fact, Peltier offered to do so for Willis: "[A]t your request, Mr. Davis, I would be happy to make a recommendation also to Ms. Howard as to whether after reviewing this and reviewing his testimony as to whether he does or does not meet the criteria." Davis responded to this offer affirmatively, "I appreciate that." Davis also asked if Willis could provide anything else "that you think might be helpful to find out." Indicating uncertainty about "all the factors you look at," Davis emphasized that "Willis is more than happy to answer any questions

you might have, because we would hate for you to think that he … has been better off than he really is."

Peltier answered that he thought no further testimony would be necessary: "[A]ctually, you took—Mr. Willis has provided pretty good answers to the questions you asked." But Howard intervened, saying that she needed some additional information about Willis's expenses. Upon questioning Willis further, Howard asked Peltier if he needed any other information. Peltier said, "I think we have got it all." After noting preliminarily that Willis's monthly expenses appeared to exceed his monthly income, Peltier said that he would review Willis's tax records, "and then I believe I can make a recommendation to the hearing examiner."

At this point, Davis repeated that he would submit the remaining records and, expressing renewed concern over the adequacy of the testimony Willis had already given, Davis offered additional testimony to establish Willis's past financial circumstances more completely:

> I just have one question for Mr. Peltier and for the hearing officer. Do we need to walk Mr. Willis back through time insofar as our position for Mr. Willis is going to be that he has been indigent all the years in question. The testimony that he has given is to his present financial status, but it doesn't roll back, or he hasn't testified, and I don't know if he could. But it doesn't roll back to '88 unless—how do we deal with that problem?

But Howard saw no need for further testimony, indicating that she would make the hardship determination based on the evidence already presented and on Peltier's forthcoming recommendation: "Well, I—Mr. Peltier is going to make the—the final calculations of what CSED's position is regarding Mr. Willis's support obligation. Then I will make the hardship determination in the decision itself." Howard went on to assure Davis that, depending on Peltier's recommendation, she might apply a hardship finding retrospectively:

> I may or may not apply the hardship criteria back in time. It just all depends on

what the final calculations look like for Mr. Peltier. And to answer your question real honestly, Mr. Davis, on at least one instance in the past, I applied—I did grant a hardship [exception] and went back in time about three years with that, so I do have the authority to do that, and if I see that it is necessary, I will enter that for the decision.

Howard then took the case under advisement, leaving the record open for supplementation.

On December 26, 1995, Peltier filed a supplemental statement confirming his receipt and review of Willis's tax records and other information; Peltier indicated that, based on this review, CSED had recalculated Willis's support obligation "to reflect all changes made to the determinations and custody." Peltier attached as exhibits to this statement a series of revised child support guidelines worksheets and a revised "Summary of Support Obligation" schedule, which recalculated Willis's past and future support under Rule 90.3(a)'s child support guidelines. This recalculation yielded ongoing child support of $173 per month effective from January 1, 1996, and arrears of $15,085 from May 1, 1988, through December 31, 1995. Making no mention of Willis's request for a hardship exemption, Peltier went on to request issuance of an order in accordance with these revised calculations.

Approximately two weeks after Peltier's supplemental statement, on January 9, 1996, Davis wrote hearing officer Howard a letter complaining that CSED had ordered Willis's wages seized despite the still pending decision on his hardship request. Davis asserted that he had repeatedly attempted to call Peltier but had received no response; he urged Howard to enter an order forbidding CSED to make any further collections pending a final decision. On January 10 Howard's supervisor, Senior Revenue Hearing Examiner Diane Colvin, responded by letter, informing Davis that CSED hearing officers have no authority to suspend collection. But Colvin reassured Davis that under AS 25.27.180 the decision in Willis's case was due by January 16. While noting that "Ms. Howard has a huge caseload," Colvin stated that "she assures me that the decision will be issued by or shortly after January 16, 1996."

But for reasons unexplained in the record, CSED reassigned the case to another hearing officer, Pat Kennedy, who failed to issue a decision until July 18, 1996. In the decision, Kennedy expressly found that Willis qualified for a hardship exemption under Alaska Civil Rule 90.3(c)(1)(A): "Given the current state of jobs in the village with MarkAir having left, a hardship finding is justified, given the size of the Obligor's family and his necessary expenses." Kennedy thus reduced Willis's ongoing support obligation by a monthly total of $16—lowering it from $173 per month (the figure CSED had calculated by applying Alaska Civil Rule 90.3(a)'s formula to Willis's current adjusted annual income) to $157 (a figure that Kennedy arrived at by imputing to Willis full-time employment at the prevailing minimum wage). But Kennedy made no comparable hardship adjustment to Willis's past child support obligation. Without even mentioning Willis's request for a hardship exemption covering his past child support obligation, Kennedy ordered him to pay arrears of $15,085 through the end of 1995—the amount Peltier had most recently calculated using Willis's tax records and the child support guidelines.[1]

After the Department of Revenue formally approved Kennedy's decision, Willis appealed to the superior court. The superior court affirmed. Rejecting Willis's claims that CSED erred in refusing to make a hardship adjustment to his past child support debt and in failing to make an adequate adjustment to his ongoing obligation, the court found that CSED's decision was supported by substantial evidence and did not amount to an abuse of discretion.

Willis appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ We give no deference to the superior court's decision when it acts as an inter-

---

1. Kennedy treated Willis's post-hearing arrears— payments accruing from January 1, 1996, through June 30, 1996—as current support, charging it at the reduced $157 monthly rate that she adopted for his ongoing support obligation.

mediate court of appeal.[2] We apply our independent judgment in reviewing CSED's rulings on issues of law that do not implicate agency expertise.[3] We review factual determinations under the "substantial evidence" test, affirming CSED unless its findings are unsupported in the record.[4] In addition, when CSED fails to consider an important issue in exercising its discretion, we may reverse its action as arbitrary.[5]

### B. CSED's Decision Does Not Adequately Explain Its Ruling on Willis's Claim of Financial Hardship.

■ Willis contends that CSED erred in failing to reduce his child support arrears and in failing to meaningfully reduce his ongoing support obligation on account of financial hardship. He also complains that CSED made inadequate findings on these issues, leaving this court in the dark as to how and why CSED arrived at its decision. We find the latter argument persuasive.

Child support payments are presumptively governed by the guidelines set forth in Alaska Civil Rule 90.3(a).[6] But in exceptional cases Rule 90.3(c)(1) allows courts to depart from these guidelines upon clear and convincing proof of "good cause" to believe that the guidelines would cause financial hardship:

> The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied. The court must specify in writing the reason for the varia-

tion [and] the amount of support which would have been required but for the variation. . . .

Subsection (c)(1)(A) specifies the kinds of circumstances that courts may consider to support a variation for good cause:

> [Good cause may include a finding that] unusual circumstances, such as especially large family size, significant income of a child, divided custody . . ., health or other extraordinary expenses, or unusually low expenses, exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children. The court shall consider the custodial parent's income in this determination[.]

At his hearing before CSED, Willis asserted good cause for a financial hardship exemption as to both his child support debt and his ongoing support obligation. On appeal, he argues that CSED acted arbitrarily because its decision "did not mention, discuss, or distinguish any of the evidence showing good cause or 'unusual circumstances' before rigidly applying [Rule] 90.3's guidelines in setting [Willis's] obligations for the years 1990–1994." Willis asserts that "[f]undamental and basic administrative law requires that administrative agencies explain their reasoning, so as to allow intelligent and non-speculative judicial review."

As Willis correctly points out, we have often held that an agency's decision must clearly set forth the key factors upon which it is based.[7] But we have never held that

---

**2.** See Williams v. State, Dep't of Revenue, 938 P.2d 1065, 1069 (Alaska 1997).

**3.** See Dunn v. Dunn, 952 P.2d 268, 272 (Alaska 1998).

**4.** See Bostic v. State, Dep't of Revenue, Child Support Enforcement Div., 968 P.2d 564, 567 (Alaska 1998).

**5.** See Ninilchik Traditional Council v. Noah, 928 P.2d 1206, 1217 (Alaska 1996).

**6.** Alaska Civil Rule 90.3(a) presumptively sets a noncustodial parent's yearly child support obligation at 20% of adjusted annual income for one child and 27% for two children. The rule defines adjusted annual income as annual gross income

less allowable deductions. See Alaska R. Civ. P. 90.3(a)(1).

> CSED has expressly adopted Rule 90.3 for purposes of its own administrative child support determinations. See 15 AAC 125.010.
> Civil Rule 90.3 Commentary VI(A) provides:
> Child support in the great majority of cases should be awarded under 90.3(a) or (b) in order to promote consistency and to avoid a tendency to underestimate the needs of the children. . . .
> . . . .
> . . . [T]he rule presumes that support calculated under 90.3(a) or (b) does not result in manifest injustice.

**7.** See, e.g., Ninilchik Traditional Council, 928 P.2d at 1217.

CSED must routinely explain its reasons for denying a hardship exemption. And no rule or regulation expressly requires such an explanation. Rule 90.3(c)(1) does require express findings on the issue of financial hardship, but only when a court finds good cause to depart from the guidelines prescribed under subsection 90.3(a): "The court must specify in writing the reason for the variation ... the amount of support which would have been required but for the variation...."[8] By requiring courts to fully explain only those decisions finding good cause to depart from Rule 90.3(a)'s child support guidelines, subsection (c)(1) implicitly recognizes that the guidelines are presumptively appropriate and that decisions applying them ordinarily need no justification.[9]

We thus conclude that CSED ordinarily need not explain a decision that rejects a hardship claim under subsection (c)(1) and that instead bases child support on the guidelines prescribed in subsection (a). But we further conclude that the unique procedural facts of this case require CSED to explain its decision.

Here, Willis asked the original hearing officer, Howard, for a "substantial hardship" determination with respect to his past, as well as ongoing support obligation. After listening to Willis's testimony, CSED's representative, Peltier, stated that he would submit a recommendation to Howard concerning Willis's hardship request. Although Howard indicated that, depending on Peltier's final calculations, she "may or may not apply the hardship criteria back in time," she assured Willis that she would "make the hardship determination in the decision itself."

Thereafter, Peltier submitted his recalculation of Willis's support using Rule 90.3(a)'s guideline but inexplicably failed to submit his promised recommendation concerning Willis's request for a hardship exemption. Howard, who by her own supervisor's account was handling "a huge caseload," failed to issue a timely ruling. Instead, she was replaced for unspecified reasons by a new examiner, Kennedy, who issued a decision more than seven months after the statutory deadline.

Kennedy's decision recognized that Willis had requested an exemption from Rule 90.3(a)'s guidelines on account of financial hardship and on this basis granted him a modest reduction of his ongoing child support payment. But the decision failed to specifically recognize the scope of Willis's request and nowhere acknowledged, addressed, or mentioned that Willis had asked for relief extending back in time to reduce his existing child support debt. Nor did Kennedy discuss or mention Peltier's failure to submit a recommendation on Willis's hardship request. And whereas Howard had declared that she believed that the law allowed her to grant a hardship exemption covering Willis's arrears, Kennedy never adopted this position—a position that CSED now disputes on appeal.

This procedural history is rife with ambiguity. The record suggests that Kennedy might have relied on any of three grounds in failing to extend her finding of hardship to Willis's child support arrears: (1) Kennedy might have concluded as a matter of fact that Willis failed to present clear and convincing evidence that reducing his arrears was necessary to prevent manifest injustice; (2) Kennedy might have adopted as a matter of law the position that CSED now advocates—that is, she might have decided that she had no authority to extend Rule 90.3(c)'s hardship exemption back in time to cover Willis's already accrued debt; or (3) not having participated in the original proceeding, and having failed to receive a recommendation from Peltier, Kennedy simply might have overlooked the fact that Willis had asked for—and that Howard had promised to rule upon—a hard-

8. Alaska R. Civ. P. 90.3(c)(1); *see also Coats v. Finn*, 779 P.2d 775, 778 (Alaska 1989).

9. *See* Alaska R. Civ. P. 90.3 Commentary VI(A), *supra* note 6; *see also Coghill v. Coghill*, 836 P.2d 921, 924 (Alaska 1992). *Cf. Byars v. Byars*, 945 P.2d 792, 795 (Alaska 1997) ("Attorney's fees awards made pursuant to the schedule in Civil Rule 82(b)(1) are presumptively correct. The prevailing party bears no burden to justify such awards, and no findings by the court are necessary."); *accord Babinec v. Yabuki*, 799 P.2d 1325, 1337 (Alaska 1990).

ship exemption covering both current payments and total arrears.

Considering this case's confused procedural history, we are unable to determine with any degree of confidence which of these potential grounds motivated Kennedy's ruling. Accordingly, we lack any meaningful basis to assume, as we normally would, that the absence of express findings reflects an informed decision by Kennedy based on a correct legal standard.

■ CSED nonetheless argues that Kennedy's decision should be upheld for two reasons. First, CSED contends, Rule 90.3(c)(1)'s hardship exemption applies only to ongoing support and does not allow courts to enter retrospective exemptions covering arrears. But in our view this contention is meritless. Although CSED insists that applying Rule 90.3(c)(1) to past support "would inject great uncertainty into the child support issue" and would undermine the "simplicity and consistency" of Rule 90.3's application, it advances no cogent reason why inherent uncertainty in subsection (c)(1) would be greater when the court fixes past support than when the court establishes support payments for the future.

In *Vachon v. Pugliese*, we made it clear that courts should ordinarily rely on Rule 90.3 to calculate the accrued child support debt of a non-custodial parent whose monthly support payments have not yet been set by order:

> [A]bsent extraordinary circumstances, courts should apply the calculation methodology of Rule 90.3 to determine amounts to be reimbursed to custodial parents for support of children during periods not covered by support orders.[10]

*Vachon's* broad reference to Rule 90.3 in its entirety directly undermines CSED's theory that arrears are governed by only subsection (a).

More recently, in *Boone v. Boone*, we remanded a case to the superior court to determine the amount of past support owed by a non-custodial parent whose support obligation had not previously been determined.[11] In so doing, we expressly authorized the court to consider on remand whether the parent's financial circumstances justified a departure from Rule 90.3's guidelines.[12] Thus *Boone*, like *Vachon*, militates against CSED's claim that subsection (c)(1)'s financial hardship provision extends only to future support.[13]

■ CSED alternatively urges us to hold that Kennedy's failure to mention Willis's request to reduce his arrears is excused by the lack of evidence supporting the request: "Even if the hearing officer had the authority to vary Mr. Willis's past child support debt using Civil Rule 90.3(c)(1)," CSED argues, "Mr. Willis failed to present clear and convincing evidence to justify a variance under the rule." While CSED acknowledges that Willis "did present evidence of his current financial situation" it faults him because "he did not present any specific evidence concerning how his economic situation in the past would justify a hardship variation under Civil Rule 90.3(c)."

■ Yet in our view the record is not obviously deficient on the issue of past hardship. It contains at least minimally sufficient evidence to warrant consideration by a hearing officer. Moreover, in claiming insufficient evidence, CSED ignores the fact that during the hearing Willis's counsel repeatedly asked Peltier and Howard if they needed more testimony about Willis's past financial situation. Davis represented that Willis would be "more than happy to answer any questions you might have because we would hate for you to think he is better off than he really is or has been better off than he really is." And Davis specifically asked, "Do we need to walk Mr. Willis back through time insofar as our position for Mr. Willis is going to be that he has been indigent all the years in question[?]" In response to these offers,

---

**10.** 931 P.2d 371, 382–83 (Alaska 1996).

**11.** 960 P.2d 579, 581–82, 584 (Alaska 1998).

**12.** *Id.* at 584.

**13.** By the same token *Boone* directly answers CSED's claim that applying the "good cause exception would amount to an impermissible 'retroactive variance.'" *See supra* notes 11–12 and accompanying text.

Peltier and Howard both assured Davis that they would be able to address Willis's request for a hardship exemption based on his financial records and his testimony describing his current situation. Hence, to the extent that the current hearing record omits specific details of Willis's past financial circumstances, this deficiency must be attributed to Howard and Peltier.

We conclude that CSED's decision fails to adequately address and explain its denial of Willis's request to reduce his child support debt by applying Rule 90.3(c)(1)'s financial hardship exemption.

### C. Willis's Other Arguments Are Without Merit.

■ Willis also argues that CSED cannot apply subsection (c)(1)'s hardship exemption without first formally adopting standards to elaborate the manner in which the exemption will be applied.[14] But the hardship exemption itself already exists as an integral part of a larger procedural rule, Civil Rule 90.3. That rule gives parties a uniform, simple, and reliable basis for predicting child support payments.[15] As a narrow exception within a broader rule, subsection (c)(1) applies only to unusual cases, and its application is determined through an individualized process of formal adjudication that involves discretion at both the agency and judicial levels. The exception must therefore be sufficiently flexible to serve the individualized context in which it is used. Moreover, the exception is explained in a thorough commentary.[16] Finally, we note that while CSED has adopted Rule 90.3 for use in its own administrative hearings, the rule itself is a rule of court that this court adopted for use in judicial proceedings. Given that judges routinely apply this rule in its present form in the courtroom, to demand additional in-

terpretative regulations before CSED can use the rule in the administrative setting would obviously be nonsensical. And because this court reviews decisions applying Rule 90.3 and retains the power to construe and modify the rule, any attempt to define it through a CSED regulation would only invite conflict between judicial and administrative interpretations. Accordingly, we find no merit to Willis's claim that the exception is incapable of being enforced without an additional regulatory layer.

Willis separately argues that the unexplained reduction that CSED granted as to his ongoing support obligation is arbitrary, capricious, and obviously insufficient. While we decline to hold that the reduction is insufficient as a matter of law, we note that the hearing officer will now have the opportunity to consider this issue further and to explain the decision it makes on remand.

## IV. CONCLUSION

Accordingly, we REMAND this case for reconsideration and additional findings.

CARPENETI, Justice, concurring.

I concur in the outcome of this case, but write separately to emphasize the unique factual circumstances in which it arises and the resulting limited nature of our holding.

Both Peltier, the CSED representative, and Howard, the hearing examiner, made express representations that they would take specific steps in response to Willis's requests. Peltier promised to submit a recommendation to Howard concerning Willis's hardship request; Howard promised to make the hardship determination in the decision itself.

---

**14.** Compare, e.g., American Jewish Congress v. City of Beverly Hills, 90 F.3d 379, 386 (9th Cir. 1996) (noting that formal standards discourage "post hoc rationalizations ... and the use of shifting or illegitimate criteria" and enable appellate review) with Amerada Hess Pipeline Corp. v. Alaska Pub. Utils. Comm'n, 711 P.2d 1170, 1178 (Alaska 1986) ("As a general rule ... administrative agencies have the discretion to set policy by adjudication instead of rulemaking.... While we endorse the judicial bridling of excessive administrative discretion by requiring guid-

ing regulations, we will only do so to the extent necessary to assure a fair administrative process.").

**15.** See Vachon v. Pugliese, 931 P.2d 371, 382 (Alaska 1996); Coats v. Finn, 779 P.2d 775, 777 & n. 7 (Alaska 1989).

**16.** See Alaska R. Civ. P. 90.3 Commentary, Part VI.

Neither Peltier nor Howard did what they promised. Peltier made no recommendation concerning Willis's request for a hardship exemption. Howard was replaced by a new hearing examiner, whose decision made no mention of, much less a ruling on, the request for relief concerning arrears.

For these reasons, the normal rule that CSED need not explain a rejection of a hardship claim under Rule 90.3(c)(1) does not apply here. Having promised an explanation of its decision, CSED must provide one.