**Daniel S. SIEKAWITCH, Appellant,**

v.

**Amy SIEKAWITCH, Appellee.**

No. S–8233.

Supreme Court of Alaska.

April 10, 1998.

Dan Allan, Law Office of Dan Allan, Anchorage, and Colleen Baxter, Ross & Miner, Anchorage, for Appellant.

Kathryn M. Coleman, Law Office of Kathryn M. Coleman, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

This appeal arises out of a dispute between Daniel and Amy Siekawitch over the custody of their two children. The parties filed a petition for dissolution of marriage in which they agreed that Daniel would have physical custody and that they would amicably arrange for visitation. Their subsequent efforts to agree upon a visitation schedule failed, and Amy moved for a "Specific Physical Custody Schedule." Following a hearing, the superior court ordered the parties to share physical custody equally. Daniel appeals on three grounds. First, he argues that the superior court violated his due process rights by failing to provide him with notice of its intention to modify physical custody. Second, he argues that the superior court erred by failing to find a change in circumstances sufficient to modify custody. Finally, he argues that the superior court erred by failing to consider the proper statutory criteria in determining the best interests of the children. We affirm.

### II. FACTS AND PROCEEDINGS

Daniel and Amy Siekawitch married in 1987. They separated for the final time in October 1994 and were divorced by decree of dissolution of marriage in July 1995. They are the parents of two children, ages two and four at the time of the divorce. In their dissolution petition, Daniel and Amy agreed that they would be awarded joint legal custody and that Daniel would be awarded physical custody of the children. They checked the box on the form petition for dissolution that states, "[w]e do not want to state specific visitation times here. We agree that we will be able to amicably decide in the future on reasonable visitation times."

After their separation in October 1994, Daniel and Amy lived with their respective

parents. The children lived with Daniel during the week and with Amy during the weekend. Amy enrolled in Alaska Computer Institute, graduated in April 1995, and was employed several weeks later. By October Amy had moved into her own home and sought additional time with the children. According to Amy, Daniel was not receptive to this idea.

Daniel and Amy sought to mediate their dispute over the course of several months. The mediation was unsuccessful, and Amy filed a "Motion for Specific Physical Custody Schedule." Superior Court Judge Michael L. Wolverton granted the motion, deeming it a "Motion for Specific Visitation Schedule," and ordered each party to file a proposed visitation schedule. Amy proposed alternating week visitation during the school year and alternating two-week periods during the summer. Daniel proposed that Amy have visitation three weekends per month and one night per week during the school year, and alternate weekends and one week per month during the summer.

Daniel then moved for an evidentiary hearing, which was held in April 1997. Following the hearing, the court announced that it had "come to a visitation schedule or shared custody schedule" that was different than either party's proposal. Under the superior court's schedule, each parent was to have the children approximately fifty percent of the time. Amy was awarded physical custody of the children from Thursday evening until Monday morning three weeks in a row and from Thursday evening until Saturday morning of the fourth week. Daniel was to have custody of the children during the remaining times. Daniel filed a motion for reconsideration, which the trial court denied. This appeal followed.

## III. DISCUSSION

### A. Standard of Review

We set forth the proper standard of review in *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997):

The superior court is vested with broad discretion in determining child custody. The superior court's custody determination will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion. A finding of fact is clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake. An abuse of discretion has occurred if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.

*Id.* at 134 (citations omitted).

### B. Due Process

Daniel argues that the superior court failed to provide him with notice of its intention to modify custody. He maintains that he believed the sole purpose of the hearing was to establish a visitation schedule, and that he was therefore denied the opportunity to call witnesses and present evidence on the issue of physical custody. He contends that this denial constituted a violation of his right to due process under the Alaska Constitution.[1]

Under the Alaska Constitution, procedural due process[2] requires that a party be afforded "notice and opportunity for a hearing appropriate to the nature of the case." *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). In a child custody proceeding, the parties are entitled to a hearing that "grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination." *Cushing v. Painter*, 666 P.2d 1044,

---

1. He further contends that he "might well have requested the appointment of a child custody investigator and/or a Guardian ad Litem" had he known the court was considering custody modification.

2. Article I, section 7 of the Constitution of the State of Alaska provides in part:
   *Due Process.* No person shall be deprived of life, liberty or property without due process of law.

1046 (Alaska 1983); *accord Hernandez v. Freeman,* 938 P.2d 1017, 1018 (Alaska 1997). We have previously held that a parent's right to due process was violated where she was denied adequate notice of the potential custodial consequences of a hearing. *See Cushing,* 666 P.2d at 1046 (holding due process violated where court reached permanent custody decision after a hearing held for the limited purpose of determining interim custody for the impending school year).

■ In this case, however, Daniel had notice that Amy sought equal time with the children. First, Amy proposed that the parties have equal time in her memorandum in support of her motion for a specific custody schedule, in her reply to Daniel's opposition to the motion, and in her proposed visitation order. Amy reiterated this proposal in her testimony at the hearing.[3] Second, the record discloses that Daniel was aware of Amy's intentions; in his opposition to Amy's motion, he expressly acknowledged that Amy sought to share physical custody equally with him. Furthermore, Daniel's counsel questioned Amy about her proposed "week on, week off" visitation schedule,[4] and commented in his closing statement that she sought "shared physical custody."[5] In fact, at oral argument before this court Daniel's counsel conceded that Daniel "indeed had notice" of Amy's intentions. Although there may have

been confusion about whether to characterize the time that Amy sought with the children as visitation or physical custody,[6] the record discloses that Daniel had notice at the time of the hearing that she sought equal time. In light of these facts, we conclude that Daniel's right to due process was not violated.

### C. *Change of Circumstances*

■ Daniel argues that Amy did not allege or prove a substantial change of circumstances and that the court "did not provide justification for modification of custody." Assuming *arguendo* that Amy sought to modify physical custody, AS 25.20.110(a) governed the superior court's decision. This statute provides that child custody "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." AS 25.20.110(a). The noncustodial parent bears the burden of establishing that a change of circumstances has occurred. *See Nichols v. Mandelin,* 790 P.2d 1367, 1372 (Alaska 1990). A court may also find a change of circumstances on its own motion. *See T.M.C. v. S.A.C.,* 858 P.2d 315, 318–19 & n. 1 (Alaska 1993).

■ In their petition for dissolution, Daniel and Amy agreed that Daniel would have

---

**3.** Amy's testimony included the following exchange with her counsel:

> Q: What is the schedule that you believe is in the children's best interests?
> A: A week on, week off schedule.
>
> . . . .
>
> Q: Is this your proposal for a year-around or is this school year or summer time?
> A: For school year. During the summer, I'll make the—the two weeks; two week on, two week off schedule.

**4.** Amy's testimony included the following exchange with Daniel's counsel:

> Q: And you said that you think it's in the best interest of the children that you have week on, week off during the school year and two weeks on and two weeks off during the summer time because you want to be a pro-active parent?
> A: That is correct.
> Q: You feel that you can't be that active in their lives unless that's the type of visitation schedule you have?
> A: It is very hard to do that. . . .

**5.** In his closing statement, Daniel's counsel observed that "[t]hey're still seeking to change physical custody to shared physical custody, week on, week off. That's shared physical custody. That's not a visitation schedule." At no point in the hearing, however, did Daniel indicate that he would present different or additional argument or evidence if the court chose to adopt Amy's proposal or any other custody schedule. Furthermore, his arguments that Amy failed to show a sufficient change of circumstances and that the court must look to the children's best interests suggest that his approach would have been similar whether the hearing was to determine visitation or custody.

**6.** To the extent that both terms refer to the time a parent spends with a child, the distinction may be more semantic than substantive. At oral argument, for example, Daniel's counsel conceded that a shared custody arrangement with a sixty-five percent—thirty-five percent division of the children's time between the parties would be "acceptable as a visitation schedule . . . as long as, of course, it was in the best interests of the children."

"physical custody" of the children. By placing Daniel's name on the dissolution form as the parent having "physical custody," they apparently intended that Daniel would have primary physical custody of the children, with the specifics of a mutually agreeable visitation arrangement to be worked out later.[7] Beyond this general agreement, however, Daniel and Amy did not specify any terms of a visitation schedule. Rather, they stated that "we will be able to amicably decide in the future on reasonable visitation times." This shared belief in their ability to agree upon a visitation schedule was a fundamental premise upon which their agreement was based. When efforts to agree upon a visitation schedule failed, they were without guidance as to how to divide time with the children. Under these circumstances, their inability to agree upon how the children's time would be divided between them represented a change from their original agreement and thus warranted the superior court's re-examination of the physical custody arrangement.[8]

### D. *Best Interests of the Children*

█ Daniel argues that "there is no evidence in the record that the trial court properly considered any of the statutory requirements" in making its custody determination.

Custody determinations must be made in accordance with the best interests of the child. *See* AS 25.24.150(c). "We review alleged inadequacy of a trial court's fact findings to determine whether they give a clear indication of the factors considered important by the trial court or allow us to determine

from the record what considerations were involved." *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 137 (Alaska 1997) (citing *Bird v. Starkey,* 914 P.2d 1246, 1249 n. 4 (Alaska 1996)). In *Borchgrevink,* the trial court did not expressly refer to AS 25.24.150(c) in making its findings. We nonetheless concluded that the trial court's findings adequately revealed its reasoning process as they provided a clear indication of the factors the court found important. *See id.* at 137.

We are presented with a similar situation here. Although the superior court did not expressly refer to AS 25.24.150(c) in its findings, it did address the pertinent statutory factors. The court found that "[b]oth parties are committed and caring parents capable and willing to meet the children's needs." *See* AS 25.24.150(c)(2). The court explained that its visitation schedule would not cause "disruption" in the children's lives and emphasized the importance of stability. *See* AS 25.24.150(c)(1), (5). It further found that its schedule "will keep the children from being away from either parent for significant blocks of time." *See* AS 25.24.150(c)(5). We conclude that these findings are sufficient to reveal the court's reasoning and indicate that the court considered the relevant statutory criteria in devising its custody schedule.[9]

### IV. *CONCLUSION*

The decision of the superior court is AFFIRMED.

7. We note that had the dissolution form reflected an agreement by the parties to joint physical custody, their dispute would merely be over *establishing* visitation rather than *modifying* custody. In such a case, no change of circumstances would be necessary.

8. We note that Amy's substantial lifestyle changes subsequent to the divorce, including her move out of her parents' home and into her own residence, and her employment after graduation from school, also represent a change of circumstances in this case. *See, e.g., Nichols v. Mandelin,* 790 P.2d 1367, 1372 (Alaska 1990) (holding that in the aggregate, parent's maturation, changed marital status, employment, and control of drinking problem constituted a substantial change in circumstances).

9. There was no need for the court to consider the preferences of the children, as they are not of sufficient age. *See* AS 25.24.150(c)(3); *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 138 (Alaska 1997) (affirming a finding that nine year old's expression of preference could be discounted). The love and affection existing between the children and each parent was undisputed. *See* AS 25.24.150(c)(4). There was no evidence of domestic violence or substance abuse. *See* AS 25.24.150(c)(7), (8). By ordering a more equal division of time with the children, the court addressed Amy's concern that Daniel interfered with her ability to engage in a frequent relationship with the children. *See* AS 25.24.150(c)(6).