David H. POTTER, Appellant,

v.

Shelly J. POTTER, n/k/a Shelly
Brewster, Appellee.

No. S–9951.

Supreme Court of Alaska.

Sept. 27, 2002.

Donna C. Willard, Law Offices of Donna C.
Willard, Anchorage, for Appellant.

Joan M. Clover, Gruenberg, Clover & Holland, Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

Under review in this case is an order that increased the child support that David H. Potter must pay and modified his visitation privileges. We conclude that the order is sustainable as to child support but not as to visitation because no notice was given that the latter issue was to be tried.

David Potter and Shelly Brewster divorced in 1990. The decree incorporated a custody and support agreement which nominally gave Brewster primary physical custody of the parties' daughter, Sunny, but included a detailed visitation order that essentially allowed the parties to have shared physical custody. Potter was to pay child support of $532 per month. Over the nine years that followed, the parties largely ignored the details of the visitation order but amicably shared custody and visitation. During much of this period, Sunny regularly stayed in Potter's home and may have spent as much time with him as with Brewster. But eventually Sunny began to spend less time with Potter and more with Brewster. By 1999, when she was fourteen years old, Sunny evidently lived full-time with Brewster and visited Potter only occasionally.

In May 1999 Brewster filed a pro se motion to increase child support payments, alleging that Sunny lived primarily with her. Potter, pro se, opposed the motion, essentially claiming that he had paid almost all of Sunny's expenses to date and had shared equally in her custody. The superior court scheduled an evidentiary hearing on the motion to increase child support for January 27, 2000.

By then both parties had hired attorneys. A week before the hearing Brewster's counsel filed two pleadings. The first was a motion to modify visitation and child support. The second was a motion to hold the first in abeyance. Brewster explained in a pleading filed January 27, 2000, that these motions were filed only as part of

a contingency plan. In the event Mr. Potter prevails and the court will not increase child support without modification of visitation ... Ms. Brewster will have in place,

with an early filing date, an alternative method. Ms. Brewster does not really want to instigate a custody modification proceeding with the requisite best interests inquiry which would necessarily involve input from her 14-year-old daughter. Above all she wants to protect Sunny from involvement in litigation. Ms. Brewster believes that she is working on behalf of Sunny by seeking child support from her father which is both fair and necessary and if support can be modified without modifying the custody order, as is our position here, she will withdraw this secondary motion.

On January 27 the court decided to take testimony from Brewster but otherwise continue the scheduled hearing. The court described the issues and proceedings of that date in an order of February 18, 2000, as follows:

By the January 27 hearing, it was clear that there were a number of factual disputes regarding the incomes of the parties and the amount of time Sunny had been spending with each parent. It was also clear that counsel had not had sufficient time to investigate and prepare for an evidentiary hearing on all of these issues and that the issues concerning income were likely to be resolved by the parties if they had additional time to exchange documents. There were also a number of related issues in dispute. The most significant legal issues were (1) whether the court should decide child support on the basis of a sole custody calculation or a shared custody calculation and (2) whether the number of overnights allowed under the parties' settlement agreement or the actual number of overnights Sunny spent with Potter should control his child support obligation. The court agreed to hear testimony from Brewster since she and her counsel had traveled to Homer for the hearing, but to continue the hearing to allow the parties additional time to prepare. The court also agreed to address the legal issues described above before the next hearing. The court permitted counsel to supplement their briefing on the legal issues.

On February 23 the evidentiary hearing continued. At the outset, so that the issues to be tried would be "confined," Brewster's counsel sought a ruling that child support could be changed without modifying the visitation order. The superior court so ruled. The parties then proceeded to try the child support issue, understanding that the court had ruled that the parties' actual visitation practices would determine how child support would be calculated. After the February 23 evidentiary hearing the parties submitted final arguments in writing, both focusing entirely on issues of child support.

Several months after the parties submitted their final arguments, the superior court issued its written decision. The court changed child support from $532 to $997 per month. The court calculated child support under Civil Rule 90.3(a), relating to primary physical custody, rather than Civil Rule 90.3(b), relating to shared physical custody. The court also modified visitation, ruling that Potter would have "reasonable visitation" that was "to be determined by the parties with a focus on rebuilding the relationship between Sunny and Potter, and without concern for child support ramifications."

From this decision Potter appeals, making the following contentions:

1. That modifying visitation violated due process because he had no notice that visitation was at issue.

2. That modifying visitation was erroneous because there was no substantial change in circumstances.

3. That child support must be based on decreed visitation rather than the visitation practices of the parties.

4. That certain factual findings concerning visitation are clearly erroneous.

Brewster responds to these arguments as follows:

1. That due process was not violated because her contingent motion to modify the child custody agreement put visitation at issue and the court did not rule on her companion motion to hold the motion in abeyance.

2. That the parties' practices regarding visitation justified the change in visitation.

3. That the child support modification can be upheld based on the parties' actual visitation practices, even if it was error to modify visitation.

We agree with Potter that he was not given notice that modification of visitation would be at issue in the evidentiary proceedings and therefore the court's order regarding visitation does not satisfy due process. This conclusion moots his second argument. But we agree with Brewster that child support was properly modified prospectively based on the parties' visitation practices. Finally, we do not believe that the court's challenged findings of fact regarding visitation are clearly erroneous.

■ Our conclusion that the court erred in modifying the visitation decree without giving the parties notice that this was an issue for trial follows from the pretrial proceedings. Brewster argued that child support could be changed based on the parties' past practices with respect to visitation without changing the visitation decree. She wanted to avoid a trial regarding visitation modification because she believed that such a trial would involve the testimony of Sunny and she did not want Sunny to be involved. Potter, on the other hand, contended that child support must be based on decreed visitation and argued that if Brewster wanted increased support she would have to prosecute her motion to modify visitation. The superior court, wishing to avoid the "potential problem of Sunny getting involved in this whole dispute, as a player," agreed with Brewster and confined the issues as Brewster requested.

■ Due process under the Alaska Constitution requires, at a minimum, that parties be notified of the subject of proceedings concerning them so that they will have a reasonable opportunity to be heard.[1] Here this requirement was not met. Potter was given no notice that modification of decreed visitation was at issue—indeed, based on the court's rulings, both parties reasonably ex-

---

1. *See, e.g., D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 212–14 (Alaska 2000).

pected that decreed visitation would not be at issue. Potter's due process rights were therefore violated.

■ We turn next to the question whether prospective child support can be modified based on the parties' actual, as distinct from decreed, visitation practices without also modifying the underlying visitation decree.

As noted, Potter argues that child support awards must be based on the visitation decreed in a governing order rather than the actual visitation practices of the parties. He cites the following language from *Turinsky v. Long:*

> Child support awards should be based on a custody and visitation order. If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order.... We hold that the trial court erred to the extent it based its calculation of support arrearages on the visitation exercised, rather than the visitation ordered.[2]

Potter also quotes another case, *Bennett v. Bennett,*[3] that explains the rationale underlying *Turinsky* as follows:

> We established this principle to prevent parents from interfering with court-ordered custody and visitation in order to gain an increase in child support payments. We intended as well to encourage parents to either comply with court orders or to move to modify them in a timely manner.[4]

Brewster responds that Potter is overgeneralizing from the quoted language in the *Turinsky* and *Bennett* cases. She points out that those cases both involved claims for past child support rather than, as here, an order setting child support prospectively. Brewster contends that applicable precedent is found in *Boone v. Boone*[5] and in the commentary to Civil Rule 90.3, section V, paragraph C.[6] In *Boone,* Brewster argues, this court held that a change in a child's residence from one parent to the other, contrary to a custody order, could serve as the basis for modifying child support.[7] She points out that the support was changed prospectively after a motion to modify child support was made.[8] This was accomplished even though the custody order was not modified during the same period.[9]

Custody and visitation, on the one hand, and child support, on the other, are interrelated under Civil Rule 90.3. Ordinarily, when parties informally agree to make a change in decreed custody or visitation that is not merely temporary or experimental, the change should be reflected both in a changed custody or visitation order and in a changed child support order. As we stated in *Morino v. Swayman:*

> [A]t some point, informal or de facto modifications of custodial or visitation arrangements should be formalized. Child support amounts and the number of visitation days allotted to the non-custodial parent are interdependent under Civil Rule 90.3(a) and (b). A premise of the rule is that it is in the best interests of the children that child support amounts bear a prescribed relationship to the time the children spend with each parent. But this

2. 910 P.2d 590, 595 (Alaska 1996).

3. 6 P.3d 724 (Alaska 2000).

4. *Id.* at 727.

5. 960 P.2d 579 (Alaska 1998).

6. Section V, paragraph C of the commentary states:

> Failure to Exercise Shared Custody. An inequity may arise under the shared custody calculation of support if the obligor does not actually exercise the custody necessary to make shared custody applicable (i.e., at least 30% of the time). If the obligor parent does not actually exercise sufficient physical custody

> to qualify for the shared custody calculation in the rule (at least 110 overnights per year—See Commentary, Section V.A), then (a)(2) of this rule will apply to the child support calculation. Failure to exercise custody in this regard is grounds for modification of support, even if the custody order is not modified. However, this provision may not be interpreted to allow the custodial parent to profit by denying visitation.

7. 960 P.2d at 582.

8. *Id.*

9. *Id.*

can only be accomplished where the decree reflects actual practice. Thus, justice is best served if the child support amount reflects the actual responsibilities and burdens of the parties.[10]

■ We believe that it is generally desirable to base prospective child support awards on prospectively applicable custody or visitation awards. But we agree with the commentary, and with Brewster's interpretation of *Boone,* that child support can be modified in recognition of a de facto change in visitation or custody without the de facto visitation or custodial change being formalized.[11] There may be reasons of expediency justifying litigating child support before taking up issues of visitation or custody.[12] Further, setting child support is in large part a predictive function. How much income will a parent make in the next year or two? The court must sometimes make what is little more than an educated guess based on the available evidence.[13] And what has happened in the past is usually a strong component of the available evidence.[14] Similarly, another component of child support, the amount of visitation a parent will exercise in the future, is also a prediction that can be based on past practices. By contrast, decreed visitation is ideal based—what is best for the child, and the parents? The best visitation practices may be worth retaining in a decree in the hope that they will occur, even if they are not consistent with what is likely to occur. Recognition of the difference between what should occur and what will probably occur seems to underlie the commentary's statement that support may be modified even if custody is not.

The commentary also stresses that its rule must not be used in a way that allows a custodial parent to profit by denying visitation.[15] We agree and because of this risk and the various direct and indirect ways that visitation can be denied and discouraged we

caution that only rarely should child support be set in an amount that reflects visitation practices different from decreed levels.

We conclude that the court did not err when it modified child support based on the parties' actual visitation practices and the child support modification can stand even though the modification of visitation must be reversed.

■ Potter's final point is that the superior court erred in finding that the amount of time that Sunny has spent with Potter has decreased over the past few years and that Sunny has lived primarily with Brewster and has spent less than thirty percent of her time with Potter during that period. Findings of fact such as these must be upheld unless they are clearly erroneous.[16] The findings in question are not clearly erroneous because they are supported by Brewster's testimony. Although her testimony on these points is contested by Potter, it is not inherently incredible.

■ Potter also argues that the court erred by "apparently" relying on visitation practices subsequent to Brewster's motion to modify child support. Potter is correct that post-litigation events should either be discounted entirely or viewed with suspicion as evidence of the parties' practices.[17] But here there is little to indicate that the court relied on post-litigation events and virtually nothing shows that they played an important role in the court's findings. We therefore find no error on this point.

We conclude for the reasons stated that the court's decision must be vacated insofar as it modified the 1990 decree as to visitation, but that it should be affirmed as to child support.

**10.** 970 P.2d 426, 429 (Alaska 1999).

**11.** *See* Alaska R. Civ. P. 90.3 cmt. V.C.

**12.** *Id.*

**13.** *See Yerrington v. Yerrington,* 933 P.2d 555, 557–58 (Alaska 1997).

**14.** *See* Alaska R. Civ. P. 90.3 cmt. III.E.

**15.** *See* Alaska R. Civ. P. 90.3 cmt. V.C.

**16.** Alaska R. Civ. P. 52(a).

**17.** *See, e.g., Karpuleon v. Karpuleon,* 881 P.2d 318, 321–322 (Alaska 1994).

AFFIRMED in part and VACATED in part.

FABE, Chief Justice, with whom CARPENETI, Justice, joins, dissenting.

FABE, Chief Justice, with whom CARPENETI, Justice, joins, dissenting.

I disagree with the court's conclusion that David Potter had inadequate notice of Shelly Brewster's desire to modify the visitation schedule to reflect the parties' current visitation practice. I also disagree that the superior court's decision modifying visitation surprised Potter or deprived him of his right to due process. Potter was well aware of Brewster's motion to modify the visitation schedule and, in fact, he characterized her attempt to modify child support to reflect current practice as "a de facto request to modify the child custody agreement." Moreover, in light of the majority's affirmance of the trial court's child support modification, its decision to remand this case for the sole purpose of requiring a new hearing on whether the visitation schedule should be modified is a waste of the trial court's valuable resources. Sunny is now within four months of her eighteenth birthday. She is long past the point of ceding any real authority in matters of visitation to any of the adults involved. To remand this case for further litigation at this point will accomplish more harm than good.

There are a number of places in the trial court record that reflect Potter's awareness that the visitation schedule was at issue. On January 20, 2000, Brewster filed a motion to modify visitation to reflect the parties' de facto modification of the visitation schedule as well as a motion to modify child support to reflect the actual visitation schedule. Judge Neville explicitly stated at the initial hearing on January 27, 2000 that Brewster's motion for modification squarely raised the issue of whether Brewster had primary physical custody of Sunny, thus requiring calculation of child support under the primary physical custody schedule of Rule 90.3(a). "[T]he real issue is going to end up being the sole or shared custody formula, which is, in large

part, a legal issue as well as a factual issue." The trial court also noted in its preliminary decision that "[a] fair reading of Brewster's statements in the documents she initially filed was sufficient to give Potter adequate notice that Brewster claimed to have primary physical custody of Sunny and wanted child support to be calculated on that basis." If Potter disagreed, Judge Neville gave him the opportunity to prove otherwise at the second hearing: "Potter's current child support obligation should therefore be determined on [primary physical custody] unless he can establish that there has been a de facto permanent modification based on Sunny spending at least 110 overnights per year with him." Finally, as Potter recognized in a February 4, 2000 memorandum on the law to be applied in the case:

> Before the Court are two interrelated issues; a motion to amend the level at which the child support payments originally were set *as well as a de facto request to modify the child custody agreement.* While Shelly undoubtedly will quarrel with the latter statement, it in fact is correct because she is contending that David voluntarily has waived his rights of visitation and further is assuming that he will continue to do so in the future. Only under those circumstances would amendment of the child support obligation be warranted. However, as will now be demonstrated neither proposition is well-taken, albeit for differing reasons.

(Emphasis added.)

In this memorandum, Potter further argued that Brewster had failed to make a prima facie showing of a substantial change in circumstances justifying a change in visitation and that rather than relying on a de facto change in visitation, Brewster "should be required to pursue that objective forthrightly and immediately."

We dealt with a similar situation in *Siekawitch v. Siekawitch.*[1] There, the parents agreed to share legal custody of the children, give the father physical custody, and determine a reasonable visitation schedule.[2] After the parents could not agree on visitation, the

---

**1.** 956 P.2d 447 (Alaska 1998).

**2.** *Id.* at 448.

mother filed a motion for a specific custody schedule, and the court ordered each party to submit a visitation plan. The mother proposed that the children alternate between the parents weekly during the school year and every two weeks during the summer.[3] The father proposed that the children spend three weekends per month and one night per week with their mother during the school year, and spend alternating weekends and one week per month with their mother during the summer.[4] Following a hearing, the court ordered that each parent would have the children fifty percent of the time.[5]

The father appealed, arguing that the superior court violated his due process rights by failing to notify him of its intention to modify custody.[6] He contended that "he believed the sole purpose of the hearing was to establish a visitation schedule, and that he was therefore denied the opportunity to call witnesses and present evidence on the issue of physical custody."[7] We rejected the father's argument, because the father had sufficient notice that the mother sought equal time with the children: In her proposed visitation schedule and reply to the father's opposition to the motion, she requested equal time with the children.[8] Moreover, the father expressly acknowledged that the mother sought equal custody in his opposition. We concluded:

> Although there may have been confusion about whether to characterize the time that [the mother] sought with the children as visitation or physical custody, the record discloses that [the father] had notice at the time of the hearing that she sought equal time. In light of these facts, we conclude that [the father's] right to due process was not violated.[9]

In January 2000 Brewster filed a motion to both modify visitation to reflect the parties' de facto modification of the visitation schedule and modify the child support to reflect that schedule modification. Brewster's purpose was to ensure that a motion to modify visitation was in place in case the trial court felt that formalization of the de facto visitation schedule was necessary to modify child support. Judge Neville's statements at both hearings, her preliminary decision, and Potter's comments demonstrate that he had sufficient notice that resolution of the child support issue rested upon the court's determination whether Brewster had exercised primary physical custody of Sunny in the past and whether continuation of such a custody arrangement and visitation schedule and modification of child support should occur in the future. I therefore respectfully dissent from the court's opinion.

---

3. *Id.* at 449.

4. *Id.*

5. *Id.*

6. *Id.* Unlike the father in *Siekawitch,* Potter was never awarded primary physical custody.

