*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRANLUND T. HOLMES, | ) | |
| | ) | Supreme Court No. S-16387 |
| Appellant, | ) | |
| | ) | Superior Court No. 3VA-05-00049 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TAMARA HOLMES, | ) | |
| | ) | No. 7233 – March 30, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Valdez, Daniel Schally, Judge.

Appearances: Herbert M. Pearce, Law Office of Herbert M. Pearce, Anchorage, for Appellant. Justin Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.    INTRODUCTION

The superior court issued an order modifying a father's child support obligation. The father appeals, arguing that the court erred in multiple respects. He asserts that the court erred in disallowing his claimed business losses from self-employment and his claimed travel expenses when calculating his income. And he argues that the court erred in not counting his at-will visitation with his children and in recognizing an aberration in the school calendar when calculating the percentage of time

he had custody of the children.  We affirm the order of the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Background Facts

Branlund T. Holmes and Tamara Holmes are the parents of two minor children.  Branlund lives in Oregon; Tamara lives in Valdez.  Under an August 2013 court order Tamara has physical custody of the children in Valdez during the school year; Branlund has physical custody of the children in Oregon during "summer vacation from one week after school gets out until a week before school begins" and during other school vacations.  Branlund is also permitted at-will visitation with the children in Valdez after providing Tamara 30 days' notice.

In March 2014 the superior court issued a child support order.  The only disputed issue was whether Tamara had primary physical custody or custody was shared, which depended on the number of days each party had custody.[1]  The court found that Tamara had primary physical custody in 2012 and 2013  but ruled that from 2014 onwards, the parties would exercise shared physical custody and Branlund would on

---

[1]    "A parent has primary physical custody (or primary custody) of children . . . if the children reside with the other parent for a period specified in the custody order of less than 30 percent of the year."  Alaska R. Civ. P. 90.3(f)(2).  "A parent has shared physical custody (or shared custody) of children . . . if the children reside with that parent for a period specified in writing in the custody order of at least 30, but no more than 70, percent of the year . . . ."  Alaska R. Civ. P. 90.3(f)(1).  A parent with primary physical custody receives child support in the amount of the adjusted annual income of the non-custodial parent multiplied by a specified percentage based on the number of children the parties have.  *See* Alaska R. Civ. P. 90.3(a).  Child support for parents with shared physical custody is based on the incomes of both parents and the percentage of custody each parent has, as well as the number of children the parties have.  *See* Alaska R. Civ. P. 90.3(b)(1).

average "have just over 115 overnights per calendar year." The court did not include at-will visitation in this calculation because that had "historically not occurred with sufficient regularity to be able to predict that there [was] a substantial chance of it occurring regularly in the future."

In November 2014 Branlund filed a motion to modify child support "due to the fact that [he] ha[d] experienced a change in employment which ha[d] resulted i[n] a decrease in his pay of more than 15%." Tamara filed a partial opposition and cross-motion for modification of child support arguing that Branlund's income had actually increased and that she now had primary physical custody. An evidentiary hearing on the matter was held in September and November 2015. The superior court issued an order modifying child support in February 2016, agreeing with Tamara that Branlund's income had increased and that Tamara had primary physical custody. Branlund appeals multiple aspects of this order.

### B. Claimed Business Losses

Branlund claimed business losses from his oil spill consulting firm, HRM Consulting,[2] and argued that these losses should be deducted from his income for the purpose of calculating child support. HRM had not earned money in several years at the time of the evidentiary hearing. The superior court did not allow Branlund's claimed business losses, finding that "HRM Consulting ha[d] not earned income in several years and [was] not likely to do so in any foreseeable future" and that "[a]llowance of such losses [would] lower[] Branlund's income which [would] lower[] his child support obligation, and this [did] nothing to benefit the children." Branlund appeals the disallowance of his claimed business losses.

---

[2] Branlund's briefs refer to the business as "HRH Consulting," but the record reveals that the business was called "HRM Consulting."

## C. At-Will Visitation

The August 2013 custody order provides, "The father will be allowed at will visitation with the children in Valdez, Alaska if he provides a minimum of 30 days['] notice to the mother. The girls will stay with their father during the at will visits in Valdez." Branlund's wife testified that because of at-will visitation Branlund had a total of 131 days with the children in 2014 and was scheduled to have a total of 115 days with the children in 2015. The custody order provided for 127 days in 2014 and 100 days in 2015 not counting at-will visitation.

In its March 2014 child support order the superior court included at-will visitation that had already occurred when determining past visitation but did not include an estimate of at-will visitation in its prospective order because Branlund had not exercised at-will visitation regularly enough to allow the court to predict that it would regularly occur in the future. In its February 2016 order the court did not include at-will visitation, explaining, "There is no reason to revisit the prior determination to not include so-called 'at will' overnights in the calculation of the number of annual overnights." Branlund appeals this determination.

## D. School Calendar

The custody order based custody on the Valdez school calendar, providing that Branlund would have custody during "summer vacation from one week after school gets out until a week before school begins." The superior court's March 2014 child support order was based in part on the 2014 Valdez school calendar, a year when summer vacation was two weeks longer than normal because of the construction of a new school building. In its February 2016 child support order the court found this aberration provided "sufficient cause to reexamine the number of overnights" and accordingly reduced the number of summer overnights afforded to Branlund to reflect the normal vacation length. Under this correction the court concluded that Tamara had

primary physical custody. Branlund appeals the court's decision to recalculate the number of days each parent would have custody, arguing that all the facts about the school calendar were known at the time of the prior order and cannot now be relitigated.

### E. Travel Expenses

Branlund alleged that in a May 2009 hearing the court had orally ordered that he be allowed to deduct work-related travel expenses — flights from his home in Oregon to his job in Alaska — from his total income. He did not provide the superior court with either the transcript or the recording of this alleged order. Branlund argued that, in reliance on this alleged order, he had always deducted his travel expenses from his income when calculating child support. In its February 2016 order the superior court ruled that Branlund could not deduct his travel expenses from his income, noting that Branlund himself described the deduction as for "self employment expenses and travel" but he was no longer self employed. Branlund appeals, arguing that the superior court was bound by its prior order.

## III. STANDARD OF REVIEW

We reverse child support awards only if the superior court abused its discretion, applied an incorrect legal standard, or clearly erred in its factual findings.[3] Given the broad definition of income in Alaska Civil Rule 90.3(a)(1), the superior court has discretion in deciding whether certain funds should be included in income for Civil Rule 90.3 purposes.[4] We therefore review for abuse of discretion the superior court's decision to disallow Branlund's claimed business losses. We review the factual findings

---

[3]    *O'Neal v. Campbell*, 300 P.3d 15, 16 (Alaska 2013).

[4]    *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992) (citing *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989)).

the court made to reach this conclusion for clear error.[5]

"[S]etting child support is in large part a predictive function."[6] "[T]he amount of visitation a parent will exercise in the future[] is . . . a prediction that can be based on past practices."[7] The trial court's act of predicting a future event is necessarily a discretionary act — the court considers a range of reasonable possibilities informed in part by past practices and in part by forecasting the future.[8] We review the superior court's decision regarding at-will visitation for abuse of discretion.

"A final child support award may be modified upon a showing of a material change of circumstances as provided by state law."[9] "In deciding whether to modify child support orders, trial courts have broad discretion," and "[w]e review a decision by

---

[5]      *O'Neal*, 300 P.3d at 16. In *Gallant v. Gallant* we said that "[d]etermination of net income is a question of fact and is reviewed under the clearly erroneous standard." 945 P.2d 795, 800 (Alaska 1997). Determination of income for Civil Rule 90.3 purposes often requires many findings of fact, which we review for clear error. *See O'Neal*, 300 P.3d at 16. But the decision whether to include certain funds when calculating income is left to the superior court's broad discretion and should be reviewed for abuse of that discretion. *See Coghill*, 836 P.2d at 926; *see also Faulkner v. Goldfuss*, No. S-13018, 2010 WL 1135745, at *3, *5-6 (Alaska Mar. 24, 2010).

[6]      *Potter v. Potter*, 55 P.3d 726, 730 (Alaska 2002).

[7]      *Id.*

[8]      *See Cox v. Cox*, 776 P.2d 1045, 1049 (Alaska 1989) (reviewing for abuse of discretion when the superior court made "a prediction of annual income for the foreseeable future" to determine child support); *cf. Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 535 (Alaska 2011) ("Because there is a range of reasonable decisions a trial judge might make in determining how long a bar from corporate board service to impose upon a defendant, this determination is reviewed for abuse of discretion." (quoting *Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1229 (Alaska 2005))).

[9]      Alaska R. Civ. P. 90.3(h)(1).

the superior court to modify child support for an abuse of discretion."[10] "On the other hand, whether the trial court applied the proper legal standard in determining that a change of material circumstances occurred is an issue of law which we review de novo."[11]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Disallowing Branlund's Claimed Business Losses.

Branlund argues that the superior court should have allowed his claimed business losses from HRM. We conclude that the superior court did not abuse its discretion or clearly err in its factual findings when it disallowed these losses.

Civil Rule 90.3(a)(1) defines income for child support purposes as the parent's total income from all sources minus specified exceptions that do not apply here. The commentary to the rule explains, "Income from self-employment, rent, royalties, or joint ownership of a partnership or closely held corporation includes the gross receipts minus the ordinary and necessary expenses required to produce the income."[12] Given the broad definition of income, the superior court has broad discretion in determining what to include in its income calculation,[13] and we will reverse such a determination only

---

[10] *Richardson v. Kohlin*, 175 P.3d 43, 46 (Alaska 2008) (citing *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002)).

[11] *Id.* (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[12] Alaska R. Civ. P. 90.3 cmt. III.B. "While this court has not officially adopted or approved the commentary, we have relied on it for guidance in determining adjusted annual income for self-employed parents." *Eagley v. Eagley*, 849 P.2d 777, 779 (Alaska 1993).

[13] *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992); *see also Faulkner v. Goldfuss*, No. S-13018, 2010 WL 1135745, at *6 (Alaska Mar. 24, 2010) ("We have (continued...)

if the superior court abused its discretion, applied an incorrect legal standard, or clearly erred in its factual findings.[14]

In this case it is undisputed that HRM had not generated any revenue in several years and that Branlund earned all his income from full-time employment completely separate from HRM. And, as Tamara noted in her written closing statement, "despite discovery requests and an order to compel issued by the court, [Branlund] did not produce a single receipt, canceled check or any other back-up documentation to support his business deductions for HRM Consulting." Based on this the superior court did not clearly err in "agree[ing] with Tamara" and finding that HRM would not earn income "in any foreseeable future" and that "[a]llowance of such losses . . . [would do] nothing to benefit the children"; nor did it abuse its discretion in denying the claimed losses.

"The primary purpose of Rule 90.3 is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay."[15] Deductions for self-employment expenses are "intended to apply to closely held corporations that serve as an income source of the party in question."[16] Allowing deduction of losses from a corporation that did not serve as a source of Branlund's income could undermine the primary purpose of Rule 90.3. We affirm the superior

---

[13]      (...continued)
interpreted Civil Rule 90.3 a number of times regarding what self-employment expenses are and are not deductible, but we have never held that net losses from self-employment income must or must not be deducted from a parent's other sources of income." (citing *Eagley*, 849 P.2d at 778; *Gallant v. Gallant*, 945 P.2d 795, 800 (Alaska 1997))).

[14]      *O'Neal v. Campbell*, 300 P.3d 15, 16 (Alaska 2013).

[15]      Alaska R. Civ. P. 90.3 cmt. I.B.

[16]      *Gallant*, 945 P.2d at 800.

court's disallowance of Branlund's claimed business losses.

**B.    The Superior Court Did Not Abuse Its Discretion In Not Counting At-Will Visitation Days Toward Branlund's Custody Percentage.**

Branlund argues that the superior court should have credited him with additional days of custody because of his at-will visitation. We conclude that the superior court did not abuse its discretion when it declined to include at-will visitation in its custody calculation.

We have held that generally "the percentage of time each parent has custody must be determined by reference to the child custody order, not the parties' actual conduct."[17] We have also commented that in a court order allowing for additional visitation above that scheduled in the order "[t]he parties must be free to seek amended prospective support orders based on realistic estimates of the total amount of custody the parents will each exercise."[18]

In the similar context of child support orders based on de facto custody we have explained that "setting child support is in large part a predictive function" and that "[t]he court must sometimes make what is little more than an educated guess based on available evidence."[19] As with predictions of income, "the amount of visitation a parent will exercise in the future, is . . . a prediction that can be based on past practices."[20] Because there is a range of reasonable decisions a trial court may make when predicting future visitation, we review the court's decision regarding at-will visitation for abuse of

---

[17]    *Rowen v. Rowen*, 963 P.2d 249, 254 (Alaska 1998) (citing *Turinsky v. Long*, 910 P.2d 590, 595 (Alaska 1996)).

[18]    *Turinsky*, 910 P.2d at 594.

[19]    *Potter v. Potter*, 55 P.3d 726, 730 (Alaska 2002).

[20]    *Id.*

discretion.[21]

In its March 2014 child support order the superior court explained that at-will visitation "ha[d] historically not occurred with sufficient regularity to be able to predict that there [was] a substantial chance of it occurring regularly in the future." Branlund did not appeal this order. Branlund filed his motion to modify child support in November 2014, and Tamara responded and cross-moved to modify child support in December 2014. At that point the prior child support order had been in place for less than a year, and the record reveals that Branlund had exercised at most four days of at-will visitation during that time.[22] Any practices of the parties after the motions in November and December carried little weight: "post-litigation events should either be discounted entirely or viewed with suspicion as evidence of the parties' practices."[23] The superior court did not abuse its discretion by not revisiting its prior decision.

Branlund argues that the superior court should have at least based the retrospective portion of its order — the portion addressing the time between Branlund filing the motion to modify child support in November 2014 and the superior court

---

[21] *See Cox v. Cox*, 776 P.2d 1045, 1049 (Alaska 1989) (reviewing for abuse of discretion when the superior court made "a prediction of annual income for the foreseeable future" to determine child support); *cf. Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 535 (Alaska 2011) ("Because there is a range of reasonable decisions a trial judge might make in determining how long a bar from corporate board service to impose upon a defendant, this determination is reviewed for abuse of discretion." (quoting *Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1229 (Alaska 2005))).

[22] Tamara calculated, based on the 2013 custody order and the 2014 Valdez school calendar, that Branlund would have custody of the children for 127 days in 2014; the superior court adopted this calculation. Branlund's wife testified that Branlund had custody of the children for 131 days in 2014, including at-will visitation.

[23] *Potter*, 55 P.3d at 730 (citing *Karpuleon v. Karpuleon*, 881 P.2d 318, 321-22 (Alaska 1994)).

issuing its order in February 2016 — on what actually occurred. But again courts should "view[] with suspicion" post-litigation practices of the parties.[24] The superior court did not abuse its discretion in not counting the at-will visitation that Branlund actually exercised after he filed his motion.

## C. The Superior Court Did Not Improperly Ignore The Principle Of Finality.

Branlund argues that the superior court ignored principles of finality when it revisited the issues of the school calendar and Branlund's travel expenses. We disagree.

We explained how principles of finality apply to child support rulings in *Bunn v. House*: "Civil Rule 90.3(h)(1), recognizing that courts have a special duty with regard to the support of children whose parents have divorced, provides an exception to the general principle that final judgments should not be disturbed."[25] Motions to modify child support "do not technically raise res judicata concerns," but "the principle of finality is a sound one."[26] Therefore, "[t]here must be a material change of circumstances before a support order can be modified."[27] A child support order may be modified when "certain fact changes [have] occurr[ed]."[28] Such changes include "shifts in the needs of the children"; "a change in one or both parents' level of income"; "[a] change in

---

[24]    *Id.*

[25]    934 P.2d 753, 757 (Alaska 1997).

[26]    *Id.*

[27]    *Id.* at 758.

[28]    *Id.*

custodial or visitation patterns"; and "certain changes in the law."[29] A court may also modify a child support order if "the needs of the children are not being met by the original order."[30] While courts have broad discretion in deciding whether to modify child support orders, "whether the trial court applied the proper legal standard in determining that a change of material circumstances occurred is an issue of law which we review de novo."[31]

As an initial matter Branlund concedes that his income changed by more than 15% due to his change in employment and that this constituted a presumptively material change of circumstances.[32] He argues that this change of circumstances only allowed the court to make modifications to child support that arose from this change. He cites no authorities for the proposition that courts are so limited when modifying child support. Ordinarily, "[t]rial courts have broad discretion in deciding whether to modify child support orders."[33] "The primary purpose of Rule 90.3 is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay."[34] And in cases where multiple material changes of circumstances have been alleged, we have stopped our analysis after concluding that one existed, while noting that

---

[29]     *Id.*

[30]     *Id.*

[31]     *Richardson v. Kohlin*, 175 P.3d 43, 46 (Alaska 2008) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

[32]     *See* Alaska R. Civ. P. 90.3(h)(1) ("A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order.").

[33]     *Petrilla v. Petrilla*, 305 P.3d 302, 305-06 (Alaska 2013).

[34]     Alaska R. Civ. P. 90.3 cmt. I.B.

the others "may bear on the amount of support due."[35]  The change in Branlund's income due to his change in employment may have been enough to allow the superior court to reopen the entire case, including the school-calendar and travel-expenses issues.  We need not reach this question, however, because there was a material change of circumstances with respect to both issues.

### 1.  School calendar

For its March 2014 order the superior court averaged the days each parent had or would have custody in 2013 and 2014 to determine the number of days per year each parent would have custody in the future.  The result was that Branlund would have custody for 115 days each year, just over 30% of the year.  The court therefore concluded that Branlund and Tamara had shared physical custody.[36]

In its February 2016 order the court found that "[t]he 2014 Valdez school calendar was anomalous based on the construction of a new school building."  The calendar that year provided for an extra two weeks of summer vacation and, therefore, an extra two weeks that Branlund had custody in the summer.  Averaging the days each parent would have custody in 2015 and 2016 resulted in Branlund having custody for 107 days each year, or just under 30%.  This constituted a material change of circumstances from the previous custody calculation.[37]

---

[35]     *Boone v. Boone*, 960 P.2d 579, 583 (Alaska 1998).

[36]     *See* Alaska R. Civ. P. 90.3(f)(1) ("A parent has shared physical custody (or shared custody) of children . . . if the children reside with that parent for a period specified in writing in the custody order of at least 30, but no more than 70, percent of the year . . . .").

[37]     *See* Alaska R. Civ. P. 90.3(f)(2) ("A parent has primary physical custody (or primary custody) of children for purposes of this rule if the children reside with the other parent for a period specified in the custody order of less than 30 percent of the
(continued...)

Branlund characterizes Tamara's argument about the school calendar as arguing that the superior court made a mistake in its March 2014 order.  In May 2014, after the superior court had issued its prior decision and after she had filed a motion for reconsideration, Tamara filed a "Notice of Additional Information Regarding Child Support Calculation" in which she explained that the 2014 school calendar was aberrant and asked the court to base the custody percentage on other years.  The superior court denied her motion for reconsideration and Tamara did not appeal.  Thus, Branlund argues that the school-calendar issue was already decided and that there has been no change of circumstances since that decision.

It is true that "the change in circumstances test relates to changes in external facts, not to mistakes."[38]  But the superior court's March 2014 determination of custody percentage going forward was inherently predictive.  The extra two weeks of summer vacation had not even happened yet and the 2015-2016 school year was far in the future.  By February 2016 it was clear that the earlier prediction had not borne out.  The court used the same methodology it had used previously of averaging two years to reach a custody percentage, and it relied on facts that had occurred after its prior order.  The court was responding to a change of facts, not correcting a prior mistake.

Branlund also argues that no material change of circumstances occurred because he still had greater than 30% custody when including at-will visitation.  But the prior order did not count at-will visitation.  Using the prior order's method for determining custody percentage, there was a material change in fact.  Branlund was free to argue, and has argued, that his regular use of at-will visitation justified changing the

---

**37**    (...continued)
year.").

**38**    *Bunn v. House*, 934 P.2d 753, 758-59 (Alaska 1997) (quoting *Larson v. Larson*, 661 P.2d 626, 628 (Alaska 1983)).

method for determining the custody percentage; but the aberration in the school calendar still constituted a material change of circumstances sufficient to revisit the issue.

The superior court did not err in concluding that there had been a material change of circumstances with respect to the school calendar.[39]

### 2. Travel expenses

Branlund alleged that in a May 2009 hearing the superior court orally ordered that he be allowed a credit for his travel expenses between Oregon, where he lived, and Alaska, where he worked. He did not provide to the court a copy of the transcript or the recording of this hearing. Branlund also alleged that he had deducted his travel expenses every year when calculating his income for child support purposes. Branlund argues that because he still lived in Oregon and worked in Alaska there was no change of circumstances that would justify the court revisiting its prior order.

The superior court found that "[r]egardless of the history of the allowance of the deduction in issue, Branlund's employment situation is now completely different than it was in 2009. He himself has labeled the deduction a 'self employment expenses and travel' deduction and is not now self-employed." Branlund argues that the deduction was for all employment-related travel and not just self-employment travel. Even if true, Branlund's employment situation had materially changed: his salary has decreased

---

[39] Branlund also argues that "the superior court erred in failing to apply the legal doctrine of res judicata." Branlund acknowledges that res judicata does not apply to motions to modify child support but asks us to apply a "principle of finality" to the case. In *Bunn* we explained, "While we believe that motions to modify child support, under Alaska law, do not technically raise res judicata concerns, the principle of finality is a sound one." *Bunn*, 934 P.2d at 757. But the requirement of a material change of circumstances is the bulwark against violations of the principle of finality. *See id.* at 757-58. We have determined that requirement has been met. Because Branlund has not identified any separate principle of finality that we may apply, this res judicata argument fails.

materially and he had not earned any revenue from self-employment in years. Given these changes, and assuming that the superior court had previously permitted Branlund a credit for his travel expenses, the court did not err in revisiting this employment-related deduction.

## V.    CONCLUSION

We AFFIRM the superior court's order modifying child support in all respects.